Larry Glenn **DICKERSON**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–86–055–CR.

Court of Appeals of Texas, Fort Worth.

Nov. 5, 1987.

Rehearing Denied Dec. 10, 1987.

S. Camille Milner, Denton, for appellant.

Jerry Cobb, Crim. Dist. Atty., and Jim E. Crouch, Asst. Crim. Dist. Atty., Denton, for appellee.

Before BURDOCK, JOE SPURLOCK, II and KELTNER, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

Appellant, Larry Glenn Dickerson, was convicted by a jury of the offense of burglary of a habitation. *See* TEX.PENAL CODE ANN. sec. 30.02 (Vernon 1974). The jury assessed punishment at fifteen years imprisonment in the Texas Department of Corrections.

We affirm.

On appeal, Dickerson presents two points of error. He argues that the evidence was insufficient to sustain his conviction, and that the trial court committed reversible error by not allowing defense counsel to question a prospective juror about where she would "percentagewise, . . . put reasonable doubt on the percentage scale?"

In addressing the points of error, we must briefly review the testimony. Appellant was indicted for the offense of burglary of the home of Kyle Wayne Brown on or about July 18, 1985. Appellant and Brown had met at work in 1978. Although friends, they only saw each other once or twice a year. On or about July 18, 1985, appellant visited Brown in his home to use his telephone. Some time between July 18th and July 22nd, Brown noticed that a pane from his master bedroom window had been removed and was lying on the floor of his bedroom. Brown did not know how the pane had come out of the window, so he merely replaced it.

On July 22, 1985, Coppell Police Department Officers went to the Delux Inn in Carrollton, Texas to question appellant about another offense they suspected him of committing. Although they did not arrest appellant then, he consented to a search of his hotel room. During the search, the police officers noted certain property items in appellant's room. These included a camera strap, a coin box, old coins, and checkbooks. The officers also saw a telephone answering machine in a box in the room. They did not find any property stolen in the burglary under investigation. They returned to their car and ran a computer check on appellant. Finding there was an arrest warrant for appellant from another county, they arrested him. Before transporting him to jail, the police officers asked the night manager to master key appellant's room so no one could enter the room except the manager.

At the Coppell Police Department, the police officers inventoried appellant's wallet and discovered two pawn tickets. One ticket was from Rose's Pawn Shop. Jerry

White, the manager of Rose's Pawn Shop, testified that he gave the ticket to a man who called himself Larry Dickerson. The man showed him a Texas Driver's License bearing that name and presented a camera and camera bag to be pawned on July 19, 1985. The other pawn ticket was from Hines Boulevard Pawn Shop. The pawn ticket had appellant's signature on it. At trial Brown identified his binoculars and radio as being some of the items on the Hines pawn ticket, and the camera from Rose's Pawn shop as his.

On the morning of July 23, 1985 appellant had signed a consent form for Coppell Police officers to search his hotel room. The policemen found there a book of checks with the names "Kyle or Christy Brown" on them, old coins, and a camera strap with Kyle Brown's name on it. The police officers noticed that an answering machine and a white straw cowboy hat were missing from the room. These items had been in the hotel room the day before. Later the same day Officer Hayes contacted Kyle Brown and asked Brown to look around to see if he was missing anything. Brown discovered several items missing including a camera and equipment, binoculars, fishing poles, old coins, a shotgun, a radio, and checks. Brown testified that the camera and old coins were kept in his master bedroom where the pane had been missing a few days earlier. The checks were kept in a desk drawer in the hallway of his home. This was the initial report of the burglary.

At appellant's trial, Gary Dickerson, the twin brother of appellant, testified that he had committed the burglary of Kyle Brown's residence. Most of his testimony was given only after the State granted him immunity from prosecution for the offense. He also stated that he had been convicted twice before of burglary. Gary testified that he was confessing to the crime because he did not want to let appellant go to jail for something he, Gary, did. He also claimed to have access to appellant's hotel room on July 22 and 23, 1985 and that he gave appellant the items which appellant pawned.

Although Gary confessed to committing the burglary, he stated that he could not remember burglarizing Brown's house very well because he was on drugs at the time. He claimed to have broken into Brown's house by breaking the front door lock with a screwdriver, but he could not remember anything else. Gary also claimed he could not remember all the property he had stolen from Brown's house nor all the different places he had stashed it because he was on "speed" on the days surrounding the commission of the crimes. Gary testified that he did remember stealing Brown's checkbook and that he did not take a camera or radio, and that appellant did not have any knowledge that he, Gary, had committed the burglary.

At the conclusion of the State's case-in-chief and when both sides rested, appellant moved for an instructed verdict on the grounds that the evidence was insufficient to sustain his conviction. The motions for instructed verdict were denied by the court.

Appellant, in his first point of error, argues the evidence is insufficient to sustain his conviction for three reasons. First, he contends that no proof exists that he had recent, unexplained possession of stolen property indicative of a conscious assertion of right to the property by him. Second, he asserts that there was no independant evidence that a burglary occurred, notwithstanding the fact that he might have had possession of recently stolen property. Third, appellant alleges the State did not prove false or unreasonable every reasonable hypothesis except his guilt.

In reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, we must view the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. State*, 672 S.W.2d 801, 803 (Tex.Crim.App.1984); *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App. 1984) (opinion on reh'g); *Wilson v. State*, 654 S.W.2d 465, 471–72 (Tex.Crim.App. 1983) (opinion on reh'g). A conviction cannot be sustained if the evidence leaves any

reasonable doubt as to the guilt of the accused. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 572–73 (1979). Thus, it follows that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the defendant. *Johnson v. State*, 673 S.W.2d 190, 195 (Tex.Crim.App.1984); *Jackson*, 672 S.W.2d at 803.

■ The evidence is sufficient to sustain a conviction for burglary when independent evidence exists of the burglary, and the evidence shows that the defendant possessed recently stolen property, the possession of the stolen property is exclusive or personal to the defendant, unexplained and indicative of a distinct and conscious assertion of right to the property by the accused. *Harris v. State*, 656 S.W.2d 481, 483 (Tex.Crim. App.1983); *Williams v. State*, 621 S.W.2d 613, 614 (Tex.Crim.App. 1981), *cert. denied*, 456 U.S. 908, 102 S.Ct. 1755, 72 L.Ed.2d 165 (1982).

■ The evidence produced at trial was sufficient to place appellant in recent unexplained possession of the stolen property. The camera, camera case, binoculars and radio belonging to Brown were found at two different pawn shops. The pawn tickets for these items were found in appellant's wallet immediately after the arrest. The evidence showed the items were pawned by appellant approximately one day after Brown's residence was broken into. The manager of Rose's Pawn Shop testified that the items were presented to him by a man who identified himself as Larry Dickerson, and who showed a Texas Driver's License with the name Larry Dickerson on it. The pawned items show appellant was in recent, unexplained possession of stolen property. Where items have been pawned by defendant near the time of a burglary, we have ruled the evidence sufficient to support the verdict. *Durant v. State*, 688 S.W.2d 265, 267 (Tex.App.—Fort Worth 1985, pet. ref'd); *Roberts v. State*, 672 S.W.2d 570, 582 (Tex.App.—Fort Worth 1984, no pet.).

Independent evidence of the burglary was presented at trial. Appellant argues that Brown did not know any property was missing until he was contacted by the police, and other than the window pane being displaced, no other signs of a forced entry existed. Brown testified that a few days before July 22, 1985, he noticed a window pane missing from the master bedroom. The camera and coins which were stolen from his home were kept in the master bedroom. Appellant had visited Brown on or about July 18, 1985, and presumptively knew about the property. Brown had given no one permission to enter his home otherwise, or take any of his property from it. No other reasonable explanation was offered or exists to explain how appellant or his brother Gary came into possession of the property other than by a burglary.

The State proved false or unreasonable every reasonable hypothesis except the guilt of the appellant. Appellant contends that the State's cross-examination of his brother did not serve to disprove Gary's admission or show Gary's admission about committing the crime was unreasonable. Gary stated at trial that he committed the burglary and testified that he gave the items to appellant to pawn them. However, the State had no obligation to disprove the explanation proffered by appellant's brother since it was made for the first time at trial. *See Espinosa v. State*, 463 S.W.2d 8, 10 (Tex.Crim.App.1971); *Valdez v. State*, 623 S.W.2d 317, 322 (Tex. Crim.App.1979). Furthermore, the fact that a person other than the defendant contends he alone committed the crime is an issue of fact to be decided by the jury. *See Hernandez v. State*, 538 S.W.2d 127, 130–31 (Tex.Crim.App.1976); *Espinosa*, 463 S.W.2d at 10. Circumstantial evidence is sufficient to rebut a defendant's explanation. *See Callahan v. State*, 502 S.W.2d 3, 7 (Tex.Crim.App.1973).

A rational trier of fact could have legitimately concluded that Gary Dickerson's testimony was false about why appellant possessed the stolen property. Gary testified he did not know Brown's address or

what Brown's house looked like. He did not remember taking a camera or radio, two items pawned by Larry Dickerson. He also did not remember if he put the checkbooks belonging to Brown in Larry Dickerson's hotel room. Gary's explanation for his loss of memory was that he was on drugs the entire time. Also, Gary testified that he broke into Brown's house by using a screwdriver to break the front door lock. However, Brown testified his doors were never left unlocked during the 18th through the 23rd, and he always checked his front door to see if it was unlocked before he used the key to open it. No locks were broken on any door. The jury was entitled to consider Gary's past criminal record (he testified he had about twenty prior convictions, some for burglary of a habitation) and his relationship to appellant in evaluating his explanation and weighing his credibility. *See Chasco v. State*, 154 Tex.Crim.Rep. 239, 226 S.W.2d 447, 448 (1950); *Durant*, 688 S.W.2d at 267; *Trussell v. State*, 722 S.W.2d 170, 172 (Tex.App. —Fort Worth 1987, pet. ref'd). We find a rational trier of fact could conclude beyond a reasonable doubt that Brown's house had been burglarized, and that appellant's being in unexplained possession of property recently stolen from the house, was sufficient to convict him of burglary of a habitation. *See Hardage v. State*, 552 S.W.2d 837, 839 (Tex.Crim.App.1977). We overrule appellant's first point of error.

Appellant, in his second point of error, complains that the trial court committed reversible error by not allowing appellant to question jurors during voir dire regarding where they would place "reasonable doubt" on a percentage scale. During the voir dire examination, defense counsel made the following statements to the jury panel:

Somewhere in the middle of all these things, somewhere either between here or here, is reasonable doubt. And there is no right answer to the question. Reasonable doubt is what you consider to be reasonable doubt. But in this vein, let me ask you individually, just a couple of questions regarding where, Mrs. Worster, would you percentagewise, if this is

fifty-one percent and this is one hundred percent, then where would you put reasonable doubt on the percentage scale?

The State objected to the question and the objection was sustained by the trial court.

The right to be represented by counsel encompasses the right of counsel to question members of a jury panel in order to exercise peremptory challenges intelligently. *Easterling v. State*, 710 S.W. 2d 569, 575, (Tex.Crim.App.1986) cert. denied, — U.S. —, 107 S.Ct. 170, 93 L.Ed. 2d 108 (1986). Generally, the trial court should give defense counsel wide latitude in questioning the jury panel during voir dire. *Smith v. State*, 703 S.W.2d 641, 643 (Tex.Crim.App.1985). However, the trial court should control the scope of voir dire by exercising its sound discretion to limit improper questioning. *Id.* at 643.

The trial court's decision to limit the voir dire examination may only be reviewed to determine whether the limitation constituted an abuse of discretion. *Ussery v. State*, 651 S.W.2d 767, 772 (Tex.Crim.App. 1983). A defendant must show abuse of discretion by proving that the question which he was prevented from asking was a proper question. *Powell v. State*, 631 S.W. 2d 169, 170 (Tex.Crim.App.1982). If the question was proper and the defendant was prevented from asking it, then harm is presumed because the defendant could not intelligently exercise his peremptory challenge without the information gained from an answer. *Smith*, 703 S.W.2d at 643.

In this case, defense counsel sought to question the jurors regarding the definition of the term "reasonable doubt." Reasonable doubt has no statutory definition; thus it is to be taken and understood in its common meaning. *See Esquivel v. State*, 595 S.W.2d 516, 525 (Tex.Crim.App.1980) *cert. denied*, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980); *see also* TEX.CODE CRIM.PROC.ANN. art. 3.01 (Vernon 1977). As the court noted in *Battie v. State*, 551 S.W.2d 401, 405 (Tex.Crim.App.1977):

It takes no stretch of the imagination to recognize that voir dire examination could be endless if counsel were allowed

to ask each prospective juror questions relative to his understanding of such words and terms as "reasonable doubt," "criminal acts of violence," and "sound memory and discretion" which have been found to be "words simple in themselves" that "jurors are supposed to know such common meaning."

*Id.*

In similar situations, the Court of Criminal Appeals has found that a trial court did not abuse its discretion in preventing defense counsel from questioning prospective jurors as to their understanding of the terms "deliberately," "probability," and "criminal acts of violence." *Milton v. State*, 599 S.W.2d 824, 826 (Tex.Crim.App. 1980), *cert. denied*, 451 U.S. 1031, 101 S.Ct. 3022, 69 L.Ed.2d 400 (1981); *Esquivel*, 595 S.W.2d at 525.

■ Reasonable doubt is a simple term which jurors are presumed to know in order to answer the question of guilt asked of them. Defense counsel was able to get the jurors to commit to the correct burden of proof, "beyond a reasonable doubt." It is not necessary, in fact creates confusion, to try to get jurors in advance to explain to each other, or counsel, what degree of credibility the evidence would have to have to be measured on a percentage scale of truth. It was not essential for defense counsel to explore each venireman's understanding of the meaning of reasonable doubt because reasonable doubt means what the jury says it means by their verdict. *See Milton v. Procunier*, 744 F.2d 1091, 1096 (5th Cir.1984), *reh'g denied*, 750 F.2d 69, *cert. denied*, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985), *reh'g denied*, 471 U.S. 1132, 105 S.Ct. 2667, 86 L.Ed.2d 283. Appellant has not shown he was harmed by the trial court's restriction of his voir dire examination, and the trial court did not abuse its discretion. We overrule appellant's second point of error.

We affirm appellant's conviction.