**Warren Tunnell ROGERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–88–00985–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 16, 1990.

John F. Carrigan, Houston, for appellant.

Before SAM BASS, HUGHES and O'CONNOR, JJ.

O'CONNOR, Justice.

This is an appeal from an aggravated robbery conviction. A jury found appellant, Warren Rogers, guilty, found the enhancement paragraphs true, and assessed punishment of 99 years. We affirm.

On January 13, 1988, appellant and co-defendant, Otis Talbert, entered an Eckerd's drug store in Houston. They asked the cashier about photo finishing, and left. Thirty minutes later, they returned and picked out two items in the store. They approached the check-out stand, as if they were purchasing the items. When the cashier, Sheryl Walpool, opened the cash register, appellant pointed a gun at her. The two of them started pulling money out of the register. The cashier tried to slam the register drawer on their hands, and screamed for help. The manager, Algie Clark, started running to the front of the store when he heard Ms. Walpool scream. By the time the manager had reached the front of the store, appellant was still holding the gun and backing out the door. When appellant said, "don't bring your ass up here," Clark stopped. After Rogers and Talbert ran out the door, Clark ran after them to try to get a description of their car.

Officer Davis, of the Houston Police Department, saw Rogers and Talbert run from the Eckerd's store with a large brown bag. The store manager ran around the corner, and told him that the store had been robbed. Davis saw Rogers and Talbert leave in a yellow Plymouth, so he and his partner tried to follow them. Officer Jackson, who was on patrol, also tried to locate the vehicle. The officers found the vehicle abandoned.

After questioning people about the car, the officers were directed to a house in the neighborhood. The owner gave them consent to search the house. Inside, the officers found appellant hiding in a bedroom closet with the money. Talbert was in the bathroom. Both the cashier and store manager identified appellant as the person who held the gun during the robbery.

## I. Sufficiency of the evidence

 In his first point of error, appellant alleges the evidence is insufficient to show that he possessed a firearm during the robbery. In reviewing the sufficiency of the evidence, we view it in the light most favorable to the verdict. *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App. 1984); *Barron v. State*, 773 S.W.2d 44, 46 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). We must then determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Anderson v. State*, 701 S.W.2d 868, 872 (Tex.Crim.App.1985); *Barron*, 773 S.W.2d at 46.

Appellant claims the evidence did not prove that the gun was not a toy, and relies on the following testimony elicited from the cashier:

Defense Counsel: That particular item that you saw that you have indicated that Mr. Rogers had as far as you know, it could have been just a piece of tubing?

Witness: No. That was a gun.

Defense Counsel: It could have been a toy gun, though, couldn't it?

Witness: It's possible. They do make them that look real.

The cashier also testified, however, that she saw "enough of it to know it was a gun," and said she "was sure it was a gun." She said that it was a silver handgun, and that she saw his finger on the trigger. The State showed the cashier a picture of a pistol, and asked her if the gun she saw was the same or similar to the one in the picture. She said that it was. The store manager also saw the gun, and said the gun in the picture was the same or similar to the one he saw the day of the robbery.

After reviewing all of the evidence, we find that a reasonable trier of fact could have found that appellant was carrying a gun at the time of the robbery. We overrule the first point.

## II. Ineffective assistance of counsel

In his second and third points, appellant claims he was denied effective assistance of counsel, listing five reasons. We will deal with them under separate headings.

 To obtain a reversal because of ineffective counsel, appellant must show that: (1) counsel's performance was so deficient that counsel was not functioning as counsel guaranteed by the sixth amendment; and (2) there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 695, 104 S.Ct. 2052, 2068–69, 80 L.Ed.2d 674 (1984); *Douglas v. State*, 739 S.W.2d 660, 662 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd).

 We must determine whether, in light of all the circumstances, counsel's acts or omissions were outside the wide range of reasonable professional judgment. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex.Crim.App.1986); *Duncan v. State*, 717 S.W.2d 345, 348 (Tex.Crim.App.1986). The constitutional right to counsel does not mean errorless counsel, or counsel whose competency is judged by hindsight. *Hernandez*, 726 S.W.2d at 58; *Duncan*, 717 S.W.2d at 348. Appellant must overcome the presumption that the challenged action might be considered sound trial strategy. *Duncan*, 717 S.W.2d at 348.

### A. Failure to ask for severance

Rogers and Talbert were tried together. Appellant claims his counsel was ineffective because he did not ask for a separate trial. Before determining whether counsel was ineffective, we must decide whether appellant would have been entitled to a severance.

 Article 36.09, TEX.CODE CRIM.PROC. ANN. (Vernon 1981), states that a severance is mandatory only if there is a previous admissible conviction against one defendant, or a joint trial would be clearly prejudicial to any defendant. Otherwise, a severance is within the sound discretion of the trial court. *Bolding v. State*, 493 S.W.2d 186, 187 (Tex.Crim.App.1973); *Foster v. State*, 652 S.W.2d 474, 477 (Tex.App.— Houston [1st Dist.] 1983), aff'd, 693 S.W.2d 412 (Tex.Crim.App.1985). In this case, the

record shows that both appellant and his co-defendant had no prior convictions, so there was no absolute right to a severance. *See Snow v. State*, 721 S.W.2d 943, 945 (Tex.App.—Houston [1st Dist.] 1986, no pet.).

Appellant complains that Talbert's defense counsel made a final argument that was prejudicial to appellant's case. In final argument Talbert's defense counsel argued "there was no testimony that Mr. Talbert knew there was a gun or knew there was going to be any type of robbery.". To support this argument he reminded the jury the cashier testified she thought Talbert was merely purchasing something, and Rogers pulled the gun. The store manager testified he did not see Talbert in the store. Additionally, he argued Talbert was innocently taking a bath when the police officers arrived, while Rogers was hiding in a closet with the money. Talbert's counsel said:

> Now, if this were a participant in some kind of conspiracy with both of these people committing the robbery, wouldn't Rogers have said, hey, Otis, the police are here. Get in the closet. You better hide. Otis wasn't noticing the police because Rogers knows he's the only one that committed this robbery and Otis Talbert did not participate in this robbery.

Appellant does not cite any authority for the proposition that the prejudicial closing argument by a co-defendant, when neither defendant offered any testimony during trial, is the equivalent to an inconsistent defense. We hold that a prejudicial closing statement by Talbert's counsel, standing alone, did not rise to the level of an inconsistent defense.

Without a showing of clear prejudice, appellant was not entitled to a severance as a matter of right. Counsel's failure to request a severance, which appellant was not entitled to as a matter of right, does not constitute ineffective assistance of counsel. *Robertson v. State*, 632 S.W.2d 805 at 809 (Tex.App. 14th Dist.1982).

**B. Voir dire**

Appellant claims that trial counsel misused a peremptory strike by failing to strike prospective juror number seven, Ruth Champion. During voir dire, Ms. Champion stated that she would be biased against Rogers if he did not take the stand to testify. Instead of striking the juror, defense counsel waited. The State struck Ms. Champion, and she did not serve as juror. Thus, appellant did not have to use one of his strikes on Ms. Champion. This was sound trial strategy. Appellant did not show how this harmed him. Instead, it appears that it helped him.

**C. Co-defendant's counsel's comments**

Appellant contends that co-defendant's counsel made an indirect comment on his failure to testify during final argument. He asserts his counsel was ineffective because he failed to object to the comment. Appellant points to the following statement by co-defendant's counsel during closing argument:

> Now, if this were a participant in some kind of conspiracy with both of these people committing the robbery, wouldn't Rogers have said, hey, Otis, the police are here. Get in the closet. You better hide.

The courts have repeatedly said that, in final argument counsel, counsel may offer a summation of the evidence and make a reasonable deduction from the evidence. *McKay v. State*, 707 S.W.2d 23, 36 (Tex. Crim.App.1985); *Urbano v. State*, 760 S.W.2d 33, 37 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). The statement above was clearly a reasonable deduction from the evidence. Co-defendant's counsel was referring to the defendants' conduct immediately before their arrest, not appellant's failure to testify.

Because the statement was not a comment on appellant's failure to testify, it was not objectionable on those grounds. Trial counsel was not ineffective for failing to object.

**D. The State's comment**

Appellant claims the State improperly commented on the fact that he and co-defendant served only half of their sen-

tences for earlier convictions. During arguments in the punishment phase of trial, the State urged the jury to find the enhancement paragraphs in the indictments true. He then turned to the pen packets, which had been admitted into evidence, and summarized for the jury: the dates of conviction; the sentences assessed; and the dates of release.

Appellant cites *Kearney v. State*, 630 S.W.2d 934, 935 (Tex.Crim.App.1982) and *Boyington v. State*, 738 S.W.2d 704, 708 (Tex.App.—Houston [1st Dist.] 1985, no pet.), in support of his argument. Those cases held that the prosecutors invited the jury to consider the parole laws; thus, the argument was improper and objectionable. In *Kearney*, 630 S.W.2d at 935, the prosecutor said: "He was sentenced to 16 years in the Texas Department of Corrections and he told you that he served six years." In *Boyington*, 738 S.W.2d at 708, the prosecutor said: "His mother picks him up at the Texas Department of Corrections three months after he is sentenced to two years."

In this case, State's counsel did not make any comment about the amount of time served on prior convictions. Instead, the prosecutor simply read the dates on the documents. This was not improper, and counsel was not ineffective for failing to object.

### E. Failure to object to charge

█ Appellant asserts he was entitled to a charge on the lesser included offense of robbery, and that trial counsel was ineffective for failing to request such a charge.

A defendant is entitled to a charge on a lesser included offense if there is some evidence that if he is guilty, then he is guilty of only the lesser offense. *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim. App.1981) (op. on reh'g); *Johnson v. State*, 773 S.W.2d 721, 724 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). On this record, if appellant was guilty, he was guilty only of aggravated robbery. There is no evidence that appellant may have only been guilty of robbery.

We overrule the second and third points.

### III. The record on appeal

█ In his fourth and fifth points of error, appellant claims he was denied his constitutional right to an adequate record on appeal. He complains that, despite his timely request, the court reporter did not include certain documents in the record. When an appellant is deprived of a complete record, which he diligently requested, and the record's incompleteness is not due to any fault of his own, an appellate court cannot affirm the conviction. *Dunn v. State*, 733 S.W.2d 212, 214 (Tex.Crim.App. 1987). It is appellant's duty to be diligent, however. *Abdnor v. State*, 712 S.W.2d 136, 141 (Tex.Crim.App.1986); *Emerson v. State*, 664 S.W.2d 787, 789 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd).

In his brief, appellant states that the following documents are missing from the record:

(1) his letter to the court reporter, designating which materials to include in the record;

(2) his co-defendant's suppression and recusal motions;

(3) transcriptions of pre-trial hearings; and

(4) a transcription of the testimony read back to the jury, upon the jury's request.

Rogers filed a pauper's oath, and designated the matters to be included in the record for appeal. He also made a motion that the court reporter include a transcription of the pre-trial hearings, and the testimony read to the jury. He did not request that any of co-defendant's motions be included in the record.

After appellant filed a motion to supplement the record with the items identified above, we granted his motion. Of those items, only numbers one and two, documents from the clerk's office, have been received and filed. Although it is the burden of the appellant to provide us with a record, we asked the clerk of this Court to assist appellant in getting items three and four filed. She made repeated calls to both the district clerk and the court reporter in an attempt to locate the other items. Both

the clerk of the court and the court reporter searched their records and told us that the other items do not exist. Finally, we asked our court clerk to contact the attorney for appellant to make sure the record was complete. Appellant's attorney informed us, through our clerk, that there were no pre-trial hearings and he considered the record complete.

We overrule the fourth and fifth points.

## IV. Definitions of "reasonable doubt"

In points of error six through ten, appellant urges that the trial court and the State both gave the jury incorrect definitions of "reasonable doubt". He argues that this was fundamental error, and he was denied due process as a result of the wrong definitions. In point of error 11, he urges that his counsel was ineffective for failing to object to the definitions.

> During voir dire, the trial court stated: One of the definitions you will not receive is beyond a reasonable doubt because the legislature has not defined that term for us, nor have the appellate courts. I am sure the lawyers will tell you in their voir dire examination what they believe beyond a reasonable doubt is. But, the bottom line is going to be what beyond a reasonable doubt is to you. I can assure you its not like they say on TV, beyond all shadow of a doubt or beyond all doubt or any of the other flowery phrases they use.

The prosecutor then stated:

> The judge told you that we don't have a definition of reasonable doubt. The only thing that we can do is tell you what it is not. We know it is not beyond all doubt. It is not beyond a shadow of a doubt.
>
> \* \* \* \* \* \*
>
> And, all conflicts in testimony may not automatically be reasonable doubt.

■ It is well established that the courts are not required to give the jury a definition of reasonable doubt. *McGinty v. State*, 723 S.W.2d 719, 721 (Tex.Crim.App. 1986); *Pierce v. State*, 265 S.W.2d 601, 602 (Tex.Crim.App.1954). "Reasonable doubt" has no statutory definition; thus, it should be understood in its common meaning. *Dickerson v. State*, 740 S.W.2d 567, 571 (Tex.App.—Fort Worth 1987, pet. ref'd).

■ It is easy to incorrectly define reasonable doubt. For example, in *Young v. State*, 648 S.W.2d 2, 3 (Tex.Crim.App.1983), the trial court erroneously instructed the jurors that if they did not have "an abiding belief as to the defendant's guilt, then [they] had a reasonable doubt." The courts often try to explain what reasonable doubt does not mean, rather than what it does mean. That is what the trial court and the prosecutor did in this case. There were no affirmative definitions given to the jury, as in *Young*.

Appellant also claims the trial court told the jury that it was the "judge of the law," and erred in doing so. The judge's statement, that "the bottom line is going to be what beyond a reasonable doubt is to you," was not erroneous. The trial court was merely telling the jurors to use their common sense. As the court in *Dickerson* stated: reasonable doubt really means what the jury says it means by their verdict. 740 S.W.2d at 572. We see no error in the statements to the jury.

■ Appellant further argues that his right to due process has been denied because the United States Supreme Court has placed the burden on the State "to convince the finder of fact with utmost certainty of a defendant's guilt." Appellant cites *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970). The Supreme Court in *Winship* stated:

> It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper fact finder of his guilt with utmost certainty.

*Id.* The Court was not defining reasonable doubt. The words were dictum only. Appellant's argument has no merit. We overrule points six through ten.

Further, trial counsel was not ineffective for failing to object to statements that

were proper. He used reasonable professional judgment. We overrule point 11.

### V. The trial court's ruling on the motion in limine

In point of error 12, appellant asserts the trial court erred when it denied his motion in limine.

 Before trial started, Rogers asked to be allowed to testify free from impeachment during the guilt stage of trial. He asked that the State be prohibited from asking questions regarding his prior convictions. The trial court asked whether he had any law to support his argument. Appellant's counsel said:

I don't have any law, your honor. However, the judge has discretion to not allow prior convictions if he so desires.

The Court: Where do you see that?

Defense Counsel: The discretion the court has—

The Court: Where do you find that? Where is there any law the court has discretion in following the rules [of evidence]?

Defense Counsel: ... a federal courts case—

The Court: I'm talking about Texas cases. I will overrule the motion. Let's proceed.

Appellant now argues that the trial court found that it did not have discretion to grant the motion. The trial court did not say that it did not have discretion; instead, it overruled the motion because appellant offered no law to support it.

On appeal, appellant relies on *Clark v. State*, 693 S.W.2d 35, 36 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd) in his argument. In *Clark*, the impeachment evidence concerned extraneous offenses that never resulted in final conviction. *Id.* This Court, in *Clark*, said that extraneous offenses are generally inadmissible for impeachment purposes *unless the charges result in final convictions*. *Id.* (Emphasis added). In this case, the evidence concerned final convictions; thus, *Clark* does not apply.

 Further, appellant has not preserved error. A ruling on a motion in limine will not preserve error. *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex.Crim.App. 1985); *Lewis v. State*, 627 S.W.2d 492, 494 (Tex.App.—Houston [1st Dist.] 1981, no pet.). It is necessary to object to the evidence when the subject is raised during trial. *Id.* Rogers apparently decided that he would not testify, so the evidence was never presented for impeachment purposes anyway.

We overrule point 12.