No. 04-98-00378-CR



Vincent MACRI, Jr.,


Appellant



v.



The STATE of Texas,


Appellee



From the 187th Judicial District Court, Bexar County, Texas


Trial Court No. 97-CR-5378


Honorable Bill M. White, Judge Presiding



Opinion by: Sarah B. Duncan, Justice


Sitting: Phil Hardberger, Chief Justice

 Catherine Stone, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: July 28, 1999


AFFIRMED


 Vincent Macri, Jr. appeals his conviction for burglary, arguing his trial counsel provided
ineffective assistance in failing to investigate and raise a temporary insanity defense and in failing
to request a lesser included instruction on criminal mischief. We disagree.



Factual and Procedural Background


 Macri began dating Sonja Baggett around May 1995 and moved into her home about one year
later. During this time, Macri received periodic psychiatric treatment at the encouragement of
Baggett. By January 15, 1997, the relationship had ended and Baggett told Macri to leave her house.
Macri left, and Baggett activated her home alarm and changed her phone number and door locks. On
the night of February 19, 1997, while Baggett and her children were away, Macri entered Baggett's
house, setting off the alarm.

 The police, responding to the alarm, arrived at Baggett's house, knocked on the door, and
identified themselves as police officers. The police immediately heard a loud "bang" followed by
Macri yelling "Come and get me. Come and get me if you want me." The police retreated to
defensive positions around the outside of the house and began talking with Macri. Macri, talking
through a broken upstairs window, demanded to know where Baggett was and explained he was
upset because she had treated him poorly. Macri wore a tank top with a fluorescent orange circle
painted in the middle, "like a target," and he yelled at the police to aim at the circle and shoot him.
Macri also admitted he was a cocaine user and "[h]e had had quite a bit of cocaine that night."

 While he was talking to the police, Macri would get very angry and walk away from the
window, at which point the police could no longer see Macri but could hear loud crashing and
banging noises inside the house. Macri began demanding the police bring Baggett to the house. After
the police stalled, Macri threatened "If she is not here within 15 minutes, I am going to set this place
on fire." Immediately after fifteen minutes had passed, Macri stepped away from the window, the
police heard a loud crash at the door, and flames appeared inside the house. Macri went back upstairs
and the police pleaded with him to give himself up. Macri refused, and when the fire became too
intense, he climbed out of the window and onto the roof. Macri walked around the roof screaming
at the police, jumping up and down, and pulling shingles and vents off the roof. Eventually, hours
after the police initially found Macri in the house, they persuaded him to come down. Macri was
placed in custody and driven to a hospital where he was treated for intoxication and smoke
inhalation.

 Police investigation after the standoff revealed heavy damage to the house. According to the
arson investigator, the fire had been intentionally started with gasoline near the front door. In
addition to the fire and smoke damage, the police also found spray paint on the walls and furniture
and broken windows.

 Macri was indicted for burglary and arson. Prior to trial, Macri's lawyer did not file a notice
of intent to offer evidence of insanity. Rather, at trial, Macri's defense was that he did not intend to
set fire to the house; he went to the house wanting to see Baggett and intending to commit suicide
by lighting himself on fire in the front yard. The jury was charged solely on the burglary count, upon
which they returned a guilty verdict. The court subsequently assessed punishment at twenty years
in prison and ordered restitution of $115,294.21.

Discussion


 The sole issue on appeal is whether Macri's trial counsel provided ineffective assistance.
Macri argues his counsel was ineffective because he failed to obtain a defense expert to determine
his sanity and help with a temporary insanity defense, he failed to raise a temporary insanity defense,
and he failed to request a charge on the lesser included offense of criminal mischief.

 When asserting ineffective assistance of counsel, an appellant has the burden of showing (1)
his counsel's performance was deficient and (2) the deficient performance prejudiced the appellant's
defense to such a degree that he was denied a fair trial. Strickland v. Washington, 466 U.S. 668, 687
(1984); Willkerson v. State, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986), cert. denied, 480 U.S. 940
(1987). We judge the effectiveness of an appellant's counsel under the totality of the circumstances,
keeping in mind that a criminal defendant is not entitled to completely error free representation.
Wilkerson, 726 S.W.2d at 548; Bridge v. State, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986).

 In his second point of error, Macri contends his counsel was ineffective in failing to obtain
a defense expert to determine his sanity at the time of the offense and assist in the preparation of an
insanity defense. The record demonstrates Macri's counsel filed neither a notice of intent to raise the
insanity defense nor a motion to appoint a mental health expert. See Tex. Code Crim. Proc. Ann.
art. 46.03 §§ 2, 3 (Vernon 1979 & Supp. 1998). However, we cannot "assume that because a record
is silent as to the depth of an attorney's investigation of the insanity defense, he made no such
investigation." Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). Indeed, there is
evidence Macri's attorney was aware of two psychiatric reports conducted for a different court that
concluded Macri was sane at the time of the burglary.(1) Furthermore, to the extent Macri complains
his counsel failed to find and bring a mental health expert to testify at trial, we are unable to find any
evidence regarding who such a witness would have been, whether the witness would have been
available at trial, and whether the witness's testimony would have been favorable to Macri. See King
v. State, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); Harling v. State, 899 S.W.2d 9, 13 (Tex.
App.--San Antonio 1995, pet. ref'd). Therefore, we hold Macri has failed to meet his burden in
demonstrating his trial counsel's performance was deficient in investigating and obtaining an expert
witness on the issue of temporary insanity.

 Macri further argues his trial counsel was ineffective for failing to raise a temporary insanity
defense. However, an attorney is not ineffective for failing to raise an insanity defense where the
evidence does not support such a defense. See Wilkerson, 726 S.W.2d at 551. While there is evidence
Macri was on cocaine the night of the burglary, voluntary intoxication is not a defense to a crime.
Tex. Pen. Code Ann. § 8.04(a) (Vernon 1994). Likewise, Macri's testimony that he could not
remember setting the house on fire and the police officer's testimony that Macri was acting
"bizarrely" and "out of control" was insufficient to raise the issue of insanity. See Lugo v. State, 732
S.W.2d 662, 667 (Tex. App.--Corpus Christi 1987, no pet.). On the whole, there is no evidence
Macri did not know his conduct was wrong. See Tex. Pen. Code Ann. § 8.01(Vernon 1994); Still
v. State, 709 S.W.2d 658, 661 (Tex. Crim. App. 1986). Therefore, Macri's counsel was not
ineffective in failing to raise a temporary insanity defense.

 In his final point of error, Macri argues his counsel was ineffective in failing to request a
lesser included charge on the offense of criminal mischief. A defendant is entitled to a charge on a
lesser included offense if: (1) the offense is a "lesser included offense" as defined by article 37.09
of the Texas Code of Criminal Procedure, Moore v. State, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998),
and (2) some evidence exists "in the record that would permit a jury rationally to find that if the
defendant is guilty, he is guilty only of the lesser offense." Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.), cert. denied, 510 U.S. 919 (1993). A person commits the offense of burglary,
as charged in this case, if, without the effective consent of the owner, he (1) enters a habitation with
the intent to commit a felony or (2) enters a habitation and attempts to commit or commits a felony.
Tex. Pen. Code Ann. § 30.02(a)(1), (3) (Vernon 1994).The felony alleged to have been intended,
attempted, or committed by Macri when he entered Baggett's home was arson. See id. § 28.02. A
person commits the offense of criminal mischief

 if, without the effective consent of the owner:


 (1) he intentionally or knowingly damages or destroys the tangible
property of the owner;


 (2) he intentionally or knowingly tampers with the tangible property of
the owner and causes pecuniary loss or substantial inconvenience to
the owner or a third person; or


 (3) he intentionally or knowingly makes markings, including inscriptions,
slogans, drawings, or paintings, on the tangible property of the owner.


Id. § 28.03(a).

 Even if we assume criminal mischief is a lesser included offense under article 37.09, Macri
presented no evidence that he entered Baggett's house with her consent. That is, there was no
evidence that if Macri was guilty, he was guilty only of the lesser included offense of criminal
mischief. See Farley v. State, 970 S.W.2d 755, 757 (Tex. App.--Fort Worth 1998, no pet.); Robledo
v. State, 717 S.W.2d 647, 650-51 (Tex. App.--Amarillo 1986, no pet.). Therefore, Macri's counsel's
performance was not deficient in failing to request an instruction on criminal mischief. See Rogers
v. State, 795 S.W.2d 300, 305 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd).

 Accordingly, we hold Macri's counsel did not provide ineffective assistance at trial, overrule
Macri's points of error, and affirm the trial court's judgment.

 Sarah B. Duncan, Justice

Do not publish

1. At the punishment phase of the trial, Macri's counsel offered two psychiatric evaluations conducted by the
same doctor. Both were conducted at the request of Judge Raymond Angelini in an earlier cause for the same burglary.
The doctor concluded Macri was addicted to cocaine and was under the influence of cocaine at the time of the burglary.
The doctor also concluded Macri suffered from a mild form of bipolar illness. However, in regard to a possible temporary
insanity defense, the doctor concluded Macri "did not suffer from a severe mental disease," and that "he knew what he
was doing" at the time of the offense.