

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00200-CR

DAVON PAUL BARRETT                                         APPELLANT

V.

THE STATE OF TEXAS                                          STATE

----------

### FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Davon Paul Barrett appeals from his conviction and sixty-year sentence for aggravated robbery with a deadly weapon. In four points, he challenges (1 & 2) the sufficiency of the evidence to support that he was the person who committed the offense and the deadly weapon finding, (3) the trial court's

---

[1]See Tex. R. App. P. 47.4.

admission of evidence under the rule of optional completeness, and (4) the trial court's admission of extraneous-offense evidence.  We affirm.

## Sufficiency of the Evidence

In his first and second points, appellant argues that the evidence is insufficient to prove that he was the man who took the complainant's purse and to prove that he used or exhibited a deadly weapon.  Accordingly, we will recite the factual background in our review of these two points.

### Applicable Facts

On January 10, 2012, the complainant stopped to fill up her car at a 7-Eleven off Highway 360 in Grand Prairie.  She had $400 to $450 in cash in varying denominations in her purse; she had a mix of pesos and United States currency.  The complainant had placed her purse under her front seat when she got out of her car.  As she was getting back into her car after filling up, she felt a gun being stuck into the left side of her back near her rib cage.  She could see the hand of the person who was holding the gun, and she saw the gun.  Although she could tell that the person holding the gun was a black male, she did not look at the man's face.  The complainant also saw that the man was wearing a light-colored white, cream, or beige long-sleeve sweater.

The complainant ran away from the man to a nearby white van.  After she circled around the van, she saw that man and another man get inside a car that left the gas station and went south on Highway 360 toward I-30.  She did not get

2

a good look at the second man.  Upon returning to her car, she discovered that her purse was gone.

The complainant called 9-1-1 at 1:31 p.m.  She told the dispatcher that she had been robbed at gunpoint by two black males who were in a beige or light yellow PT Cruiser heading down Highway 360 toward I-30.  After being shown a video from the 7-Eleven, the complainant agreed that the car the men got into appeared to be silver.  She also testified that the video accurately depicted a man in a white shirt approaching her and then getting into a car along with a man in a black shirt after she had run away.

Because the complainant is not a native English speaker, the Grand Prairie police officers who originally responded to the 7-Eleven had a difficult time communicating with her.  When asked the color of the car the men got into, she pointed to the 7-Eleven building, which had a tan or beige part along with a gray part, but the officers could not tell which color she meant.  When Officer Oscar Garcia arrived, he was able to speak to the complainant in Spanish.  Although she was hysterical and teary-eyed, she told him that a black male had robbed her at gunpoint, he had stuck a gun into her left side, the driver of the car that left the gas station afterward wore a white or light-colored sweatshirt, the passenger wore a black hooded jacket, and the car was "gris," or gray.

After about twenty minutes, Officer Garcia took the complainant to the police station where a detective interviewed her.  As the complainant was sitting inside the police station, she saw the car into which the man who robbed her had

fled being driven into the parking lot. The complainant gave a written statement to the police, who gave her purse back to her while she was at the station. She was at the station for about two hours.

While some officers responded directly to the complainant, other officers were looking for the car with the suspects. Police Chief Steve Dye and Assistant Chief Don Trask heard the robbery call and description of the car around 1:34 p.m. as they headed back to Grand Prairie police headquarters from lunch. At 1:43 p.m., Chief Dye saw a silver four-door Chevrolet HHR at the gas pumps of the E-Z Mart on Mayfield and Highway 360. The E-Z Mart is about six and a half miles away from the 7-Eleven. Chief Dye testified that the body style of an HHR is similar to a PT Cruiser.

When Chief Dye pulled into the parking lot of the E-Z Mart, he saw two black males who appeared to "be associated with" the HHR. One of the men was wearing a white hooded sweatshirt, and the other was wearing a black hooded sweatshirt. Although Chief Dye's car was unmarked, he and Assistant Chief Trask were both in uniform. When the two men with the HHR saw Chief Dye and Assistant Chief Trask, the man in the black sweatshirt walked toward the front of the store and disappeared. Chief Dye thought he had gone into the store. The man in the white hooded sweatshirt finished pumping gasoline into the silver HHR, went inside the store, came back out, and drove away in the car. Chief Dye thought it suspicious that he had left without the other man. At 1:47 p.m., Officer Greg New, who had by that time responded to the 7-Eleven

4

and viewed the surveillance video there, broadcast that the suspect vehicle was possibly silver; this led Chief Dye to believe that the HHR may have been the car that the complainant had seen. Chief Dye told Assistant Chief Trask to go inside the E-Z Mart to look for the man in the black hooded sweatshirt and detain him; after Assistant Chief Trask got out of the car, Chief Dye followed the man driving the HHR.

Chief Dye stopped the driver of the HHR around 1:51 p.m.; at trial he identified the driver as appellant and testified that he was driving the same HHR that had been at the E-Z Mart. Appellant was wearing a white hooded sweatshirt, and he was nervous. When Chief Dye asked appellant where he had been and if anyone had been with him at the E-Z Mart, appellant initially lied and said he had been alone and that he had been coming from a different direction than the E-Z Mart. Chief Dye arrested appellant, but another officer arrived to take appellant to jail. When police booked appellant into the Grand Prairie jail, they found $258 in cash on him.

After Chief Dye left the E-Z Mart to follow appellant, Assistant Chief Trask searched for the other man in the store, but he could not find him. He and other officers watched surveillance video from the E-Z Mart. On the video, officers saw the man in the black sweatshirt get out of the passenger side of the car, go to the trash can, bend down, and then go back to the car. Officers found the complainant's stolen purse in the trash can.

The detective who investigated the case testified that the HHR had a paper dealer's tag over the metal license plate; the paper tag belonged to a woman in Euless, but when the detective ran the number on the metal plate, it came back registered to appellant's mother. He also testified that the police never found a gun.

Appellant contends that the evidence is sufficient to support only a speculation that he was the man who held a gun on the complainant and that the jury could not have reasonably concluded that he was the robber based on the discrepancies in the complainant's description of the suspect's shirt and car: she said the man was wearing a sweater, not a hoodie, and she described the car as a yellow or beige PT Cruiser. Appellant also highlights the fact that he was found with only United States, not Mexican currency, that there are no forensics tying him to the crime, that the police never recovered a gun, and that the complainant could not identify him in a photo lineup.

**Analysis**

Identity may be proven by direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009), *cert. denied*, 131 S. Ct. 103 (2010). As the court of criminal appeals has explained about circumstantial evidence,

> Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. Circumstantial evidence is as probative as direct evidence in establishing the guilt

6

of an actor, and circumstantial evidence alone can be sufficient to establish guilt.

*Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citations omitted); *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.—Austin 2000, pet. ref'd).

We defer to the jury's resolution of any discrepancies in the complainant's description of events, some of which can be explained by her difficulty communicating in English, especially while upset. *See Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 2793 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). From the video recorded at the 7-Eleven and played for the jury, it can be seen that the man in the white sweatshirt approached the complainant, who then ran away; that both men approached the complainant's car; and that both men got into a silver car and drove away. The complainant identified that car at trial as the one that pulled into the police station's parking lot while she was there. The evidence shows that the same car was the one appellant was driving when Chief Dye stopped him and that the car was registered to appellant's mother. We conclude that a rational jury could have determined beyond a reasonable doubt that appellant was the person who robbed the complainant. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

Appellant additionally contends that there is no evidence that he used a real gun during the commission of the offense. The complainant testified that the object thrust into her side was a gun, that it was silver, and that it looked like the

7

guns worn by police officers.  Based on this testimony, the jury could draw the reasonable inference that appellant used a real gun.  *See Rogers v. State*, 795 S.W.2d 300, 303 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd).  We overrule appellant's first and second points.

**Admission of Police Call Notes Under Optional Completeness Rule**

In his third point, appellant contends that the trial court abused its discretion by admitting evidence containing hearsay under the rule of optional completeness.  *See* Tex. R. Evid. 107.  When the State initially offered the call notes from the police department's communication center—consisting of the transcription of officers' calls to report offenses—the trial court sustained appellant's objection that they contained hearsay.  While cross-examining Chief Dye, appellant questioned him about specific times and entries listed in the version of the document that Chief Dye was using to refresh his memory.  According to appellant, that is the only purpose for which the document was used during cross-examination.  Thereafter, the State re-offered the entire document under the rule of optional completeness, and the trial court admitted it.

Appellant claims the trial court abused its discretion in admitting the exhibit because the parts of the document used by the defense were not false or misleading, nor did they leave a false impression with the jury.  Additionally, he claims that the entire document was unnecessary and that only parts of the document were corrective and on the same subject.  Appellant claims that he

8

was harmed because the prejudicial effect of the document was exacerbated by the State's extensive usage of the hearsay portions of it on redirect.

When the State offered the evidence in accordance with the rule of optional completeness, appellant's counsel's only objections were "hearsay" and that Chief Dye had "used it to refresh his memory with [counsel], and that's not the one he used for [appellant's counsel]." Because appellant's arguments on appeal do not comport with his trial objection, they were not preserved for review. *See* Tex. R. App. P. 33.1(a)(1); *Hailey v. State*, 413 S.W.3d 457, 465 n.2 (Tex. App.—Fort Worth 2012, pet. ref'd). We overrule his third point.

### Extraneous Offense

In his fourth point, appellant argues that the trial court reversibly erred by admitting evidence of an extraneous offense: that when Chief Dye pulled him over he was driving with his license suspended (DWLS). According to appellant, the evidence was admissible solely for character conformity and was substantially more prejudicial than probative. At trial, appellant's only objection to the evidence was "extraneous"; he did not cite a rule. Nevertheless, the trial court sua sponte granted appellant a running objection. By objecting to the evidence as "extraneous," appellant preserved only a complaint that the evidence is not admissible under rule 404(b) because it served "no probative purpose." *See* Tex. R. App. P. 33.1(a); *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim. App. 1991) (op. on reh'g).

9

Even assuming the trial court abused its discretion by admitting the evidence under rule 404(b), any error was harmless. *See* Tex. R. App. P. 44.2(b); *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). The State spent very little time developing the evidence, which was minor compared to the rest of the evidence implicating appellant in the robbery. The trial court included a 404(b) limiting instruction in its jury charge. *See Higginbotham v. State*, 356 S.W.3d 584, 593 (Tex. App.—Texarkana 2011, pet. ref'd). Additionally, the State did not mention the offense in its closing argument. We overrule his fourth point.

## Conclusion

Having overruled appellant's four points, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 5, 2014