ACCEPTED
01-14-00332-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/14/2015 1:36:23 PM
CHRISTOPHER PRINE
CLERK

## No. 01-14-00332-CR

In the
Court of Appeals
For the
First District of Texas
At Houston

———————◆———————

## No. 1386629

In the 262nd District Court
Of Harris County, Texas

———————◆———————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

1/14/2015 1:36:23 PM

CHRISTOPHER A. PRINE
Clerk

### DERRICK LEE THOMAS
*Appellant*
V.
### THE STATE OF TEXAS
*Appellee*

———————◆———————

STATE'S APPELLATE BRIEF

———————◆———————

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**ABBIE MILES**
State Bar No:  24072240
Assistant District Attorney
Harris County, Texas

**Jim O'Donnel**
Assistant District Attorneys
Harris County, Texas

1201 Franklin, Suite 600
Houston, Texas  77002
Tel.:  713/755-5826
FAX No.:  713/755-5809

ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Tex. R. App. P. 9.4(g) and Tex. R. App. P. 39.1, the State requests oral argument only if oral argument is requested by the appellant.

## IDENTIFICATION OF THE PARTIES

Pursuant to Tex. R. App. P. 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below.

Complainant, victim, or aggrieved party:

**State of Texas**

Counsel for the State:

**Devon Anderson** — District Attorney of Harris County

**Abbie Miles** — Assistant District Attorney on appeal

**Jim O'Donnel** — Assistant District Attorney at trial

Appellant or criminal defendant:

**Derrick Lee Thomas**

Counsel for Appellant:

**Maverick J. Ray** — Counsel on appeal

**Audrie Lawton** — Counsel at trial

Trial Judge:

**Hon. Denise Bradley** — Presiding Judge

i

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT…………………….....………..i

IDENTIFICATION OF THE PARTIES…………………………………....……i

INDEX OF AUTHORITIES…………………………………....…………….iii

STATEMENT OF THE CASE………………………………………....…….1

STATEMENT OF THE FACTS…………………………………...…………..1

SUMMARY OF THE ARGUMENT…………………………....……….....3

REPLY TO APPELLANT'S FIRST ISSUE PRESENTED
The trial court did not err in denying appellant's motion to suppress because the search of appellant's vehicle was supported by probable cause since Officer Parker observed crack cocaine in plain view on the driver's seat of appellant's vehicle while Officer Parker was standing outside the vehicle at a lawful vantage point……………5

REPLY TO APPELLANT'S SECOND ISSUE PRESENTED
Appellant has not preserved any claim that the trial court's comments to the venire lowered the State's burden because he failed to object at trial, and the comments did not indicate a bias or partiality. The trial court's comments did not confuse the jury or lower the State's burden because the comments simply encouraged the venire to use their common sense when determining if the State has proven the case to each beyond a reasonable doubt to each individual juror. Further, appellant has inadequately brief this point of error regarding an alleged jury charge error by providing no authority for the proposition that the instruction on the burden of proof in this case was erroneous. Regardless, the instruction in this case does not define beyond a reasonable doubt, or comment on the evidence, and is thus not error. Appellant cannot establish that he suffered any harm as a result of the trial court's statements in voir dire or the jury instruction regarding the burden of proof because appellant failed to argue that he suffered harm, and thus impliedly concedes there was no harm, and the evidence of appellant's guilt was overwhelming.................................12

REPLY TO APPELLANT'S THIRD ISSUE PRESENTED
However, the trial court did not abuse its discretion in admitting State's Exhibit 4 and 5, the evidence envelope and the crack cocaine rocks contained therein, because the chain of custody was conclusively established by Officer Parker who testified that he retrieved the evidence, tagged it for transport to the laboratory, then retrieved the exhibits and brought them to court for trial………………………………….....…23

REPLY TO APPELLANT'S FOURTH ISSUE PRESENTED
The evidence that appellant possessed the crack cocaine rocks is legally sufficient because of appellant's close proximity and accessibility to the narcotics, appellant was seen gesturing suspiciously in the area of where the drugs were found, the narcotics were found in plain view where appellant was sitting, and appellant was acting nervous.................................................................................................................................29

CONCLUSION………………………………...………………………………...37

CERTIFICATE OF SERVICE……………………………………………….....38

# INDEX OF AUTHORITIES

**Cases**

*Abdnor v. State*,
  871 S.W.2d 726 (Tex. Crim. App. 1994)...................................................................... 12

*Almanza v. State*,
  686 S.W.2d 157 (Tex. Crim. App. 1984) ...................................................................... 13

*Alvarado v. State*,
  912 S.W.2d 199, 207 (Tex. Crim. App. 1995)............................................................... 30

*Anderson v State*,
  414 S.W.3d 251 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). ........................... 15

*Arizona v. Gant*,
  556 U.S. 332, 351 (2009). ......................................................................................10, 11

*Barnes v. State*,
  424 S.W. 3d 218,  (Tex. App.-Amarillo 2014, no pet.)................................................ 10

*Brooks v. State*,
  323 S.W.3d 893 (Tex. Crim. App. 2010)(plurality op.)................................................ 30

*Cade v. State*,
  795 S.W.2d 43 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) ............................. 17

*Carmouche v. State*,
  10 S.W.3d 323 (Tex. Crim. App. 2000). ........................................................................ 6

*Carriere v. State*,
  84 S.W.3d 753 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) .......................20, 21

*Clayton v. State*,
  235 S.W.3d 772, 778 (Tex. Crim. App. 2007)............................................................... 31

*Conner v. State*,
  67 S.W.3d 192, 197 (Tex. Crim. App. 2001)................................................................. 30

*Copeland v. State,*
    No. 14–07–00475–CR, 2008 WL 4735199 (Tex. App.--Houston [14th Dist.] Oct. 30, 2008, pet. ref'd) (mem. op., not designated for publication) ................................. 19

*Davis v. State,*
    313 S.W.3d 317 (Tex. Crim. App. 2010). .......................................................... 23

*Dahlem II v. State,*
    322 S.W.3d 685 (Tex. App.—Fort Worth 2010, pet ref'd) ................................... 9, 10

*Dewberry v. State,*
    4 S.W.3d 735, 740 (Tex. Crim. App. 1999) ...................................................... 31

*Dickey v. State,*
    96 S.W.3d 610 (Tex. App.—Houston [1st Dist.] 2002, no pet.). ............................. 9

*Dossett v. State,*
    216 S.W.3d 7 (Tex. App.—San Antonio 2006, pet ref'd). .................................... 24

*Ennis v. State,*
    71 S.W.3d 804 (Tex. App.—Texarkana 2002, no pet.). ...................................... 29

*Evans v. State,*
    202 S.W.3d 158 (Tex. Crim. App. 2006) .......................................................... 32

*Ford v. State,*
    158 S.W.3d 488 (Tex.Crim.App. 2005) ............................................................ 5

*Fuentes v. State,*
    991 S.W.2d 267 (Tex. Crim. App.1999) ....................................................... 14, 30

*Fuller v. State,*
    363 S.W.3d 583 (Tex. Crim. App. 2012) .......................................................... 15

*Garcia v. State,*
    246 S.W.3d 121 (Tex. App.—San Antonio 2007, pet. ref'd) ................................. 20

*Geesa v. State,*
    820 S.W.2d 154 (Tex. Crim. App. 1991 .......................................................... 19

*Guzman v. State,*
   955 S.W.3d 85 (Tex. Crim. App. 1997). ................................................................ 6

*Haro v. State,*
   371 S.W.3d 262 (Tex. App.—Houston [1ˢᵗ Dist.] 2001, pet ref'd) ......................14, 17

*Hooper v. State,*
   214 S.W.3d 9, 13 (Tex. Crim. App. 2007) ........................................................... 31

*James v. State,*
   264 S.W.3d 215 (Tex. App.—Houston [1ˢᵗ Dist.] 2008, pet ref'd). ........................... 35

*Lagrone v. State,*
   942 S.W.2d 602 (Tex. Crim. App. 1997). ............................................................. 24

*Latson v. State,*
   440 S.W.3d 119 (Tex. App.—Houston [14ᵗʰ Dist.] 2013, no pet.). ......................16, 18

*Layton v. State,*
   280 S.W.3d 235 (Tex. Crim. App. 2009). ............................................................. 13

*Long v. State,*
   532 S.W.2d 591 (Tex. Crim. App. 1975) ............................................................... 8

*Martin v. State,*
   173 S.W.3d 463 (Tex. Crim. App. 2005). ............................................................. 23

*Matson v. State,*
   819 S.W.2d 839 (Tex. Crim. App. 1991) .............................................................. 31

*Maxwell v. State,*
   73 S.W.3d 278 (Tex. Crim. App. 2002) ................................................................ 5

*Meadows v. State,*
   01-09-00443-CR and 01-09-00444-CR, 2010 WL 2874199 (Tex. App.—Houston
   [1ˢᵗ Dist.] July 22, 2010, pet ref'd) ..................................................................... 18

*Mendez v. State,*
   138 S.W.3d 334 (Tex. Crim. App. 2004). ............................................................. 13

*Moore v. State,*
  907 S.W.2d 918 (Tex. App. --Houston [1st Dist.] 1995, pet. ref'd) ........................... 14

*Motilla v. State,*
  78 S.W.3d 352 (Tex. Crim. App. 2002). ......................................................... 22

*Murphy v. State,*
  112 S.W.3d 592 (Tex. Crim. App. 2003). ................................................. 15, 18

*Nichols v. State,*
  886 S.W.2d 324 (Tex. App.—Houston [1st Dist.] 1994, pet ref'd). ........................... 7

*Paulson v. State,*
  28 S.W.3d 570 (Tex. Crim. App. 2000). ................................................. 19, 20

*Poindexter v. State,*
  153 S.W.3d 402 (Tex. Crim. App. 2005) ....................................................... 32

*Pomier v. State,*
  326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet. h.) ............... 30

*Reasor v. State,*
  12 S.W.3d 813 (Tex. Crim. App. 2000) ....................................................... 7

*Rogers v. State,*
  795 S.W.2d 300 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). .................... 15, 18

*Shaw v. State,*
  329 S.W.3d 645 (Tex. App.—Houston [14th Dist.] 2010, pet ref'd) ..................... 24, 26

*St. George v. State,*
  237 S.W.3d 720 (Tex. Crim. App. 2007) ....................................................... 5, 6

*State v. Betts,*
  397 S.W.3d 198 (Tex. Crim. App. 2013). ....................................................... 7

*Swarb v. State,*
  125 S.W.3d 672 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd) ..................... 8, 9

*Swearingen v. State,*
  101 S.W.3d 89, 96 (Tex. Crim. App. 2003) ................................................. 31

*Texas v. Brown,*
  460 U.S 730 (1983)................................................................................................. 7

*United States v. Edwards,*
  166 F.3d 1362 (11th Cir. 1999)......................................................................33, 34

*United States v. Kitchen,*
  57 F.3d 516 (7th Cir. 1995) ...........................................................................33, 34

*United States v. Majette,*
  326 Fed. Appx. 211, 213 (4th Cir. 2009) ........................................................... 11

*United States v. Sparks,*
  291 F.3d 683 (10th Cir. 2002) ............................................................................ 10

*Villani v. State,*
  116 S.W.3d 297, 301 (Tex. App.—Houston [14[th] Dist.] 2003, pet. ref'd.) ..........30, 31

*Walter v. State,*
  28 S.W.3d 538 (Tex. Crim. App. 2000) ............................................................. 8, 9

*Wilder v. State,*
  111 S.W.3d 249 (Tex. App.—Texarkana 2003, pet ref'd)........................................ 17

*Williams v. State,*
  No. 07-01-0414-CR, 2003 WL 327601 (Tex. App.—Amarillo 2003, pet. ref'd) ...... 18

*Wilson v. State,*
  71 S.W.3d 346 (Tex. Crim. App. 2002). ............................................................. 13

*Wyatt v. State,*
  23 S.W.3d 18, 30 (Tex. Crim. App. 2000) ........................................................ 31

*Zachery v. State,*
  No. 14-07-01050-CR, 2009 WL 136915 (Tex. App.—Houston [14th Dist.] 2009, no
  pet.) .................................................................................................................. 17

**Statutes**

TEX. CODE OF CRIM. PROC. ANN. art. 36.19 (West 2012)........................................13, 23

TEX. CODE OF CRIM. PROC. art. 14.01................................................................................... 8

TEX. CONST. art. I, § 9 .......................................................................................................... 7

TEX. CONTROLLED SUB. ACT. § 481.115 (West 2013). ..................................................... 32

TEX. TRANSP. CODE § 545.104 (West 2011) ......................................................................... 8

U.S. CONST. IV ...................................................................................................................... 7

## Other Authorities

BLACK'S LAW DICTIONARY (9th ed. 2009). ......................................................................... 27

## Rules

TEX. R. APP. P. 9.4(g) ............................................................................................................. i

TEX. R. APP. P. 33.01 ........................................................................................................... 13

TEX. R. APP. P. 38.2(a)(1)(A) ................................................................................................ i

TEX. R. APP. P. 39.1 ............................................................................................................... i

TEX. R. APP. P. 44.2(a) ........................................................................................................ 22

TEX. R. EVID. 901 ................................................................................................................ 23

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

Appellant was charged with possession of a controlled substance, and in two enhancement paragraphs, was alleged to have been previously convicted of assault of a family member and possession of a controlled substance with intent to deliver (C.R 10; R.R.III 7). Appellant entered a plea of not guilty to the offense, and pleas of "true" to both enhancement paragraphs (R.R.III 7, R.R.V 6). The jury found appellant guilty, and the court assessed punishment at confinement for five years in the Institutional Division of the Texas Department of Criminal Justice (R.R.IV 39, R.R.V 24, C.R.103)

———————◆———————

## STATEMENT OF FACTS

The State challenges all factual assertions in appellant's brief and presents the following account of the facts.

Officer Matthew Parker, of the Houston Police Department, was on duty May 6, 2013, on the north side of Houston in an area known for narcotics and gang activity, when he pulled over a vehicle that failed to signal a left turn (R.R.III 15-17). Once the car pulled over, Officer Parker approached the driver's side window, and asked the driver, Derrick Lee Thomas, appellant, for his driver's license (R.R.VIII 17-18). In the passenger seat of appellant's vehicle sat Ed Galloway (R.R.III 17, 23).

While Officer Parker was talking to appellant, he sounded very nervous and his hands were shaking (R.R.III 18). Officer Parker noticed that appellant's right hand appeared to be "cuffed" as if he was "holding onto something or concealing something" (R.R.III 18-19). Officer Parker knew from his experience that people often try to conceal narcotics in their hands in a similar way (R.R.III 19). Appellant used his right hand that was "cuffed" to reach into his back right pocket to retrieve his wallet, and as he did so his "cuffed" fingers appeared to open allowing him to drop something in the area of his right thigh before retrieving his wallet[1] (R.R.III 20).

Officer Parker's suspicion that appellant was concealing narcotics persisted after seeing appellant do this (R.R.III 22). Appellant gave Officer Parker his driver's license, and then Officer Parker asked appellant to step out of the vehicle in hopes of retrieving what appellant dropped on the seat (R.R.III 22). As appellant got out of the car, Officer Parker saw two white crack rocks on the driver's seat (R.R.III 23, R.R.IV 17). Officer Parker pretended like he did not see the crack rocks and placed appellant in the backseat of his patrol car[2] (R.R.III 23-24).

Officer Parker returned to appellant's vehicle, this time asking Mr. Galloway to exit the vehicle (R.R.III 25). Mr. Galloway begins mumbling "as if he was concealing something in his mouth" (R.R.III 25). Officer Parker knew from his experience that Mr. Galloway was likely concealing narcotics in his mouth (R.R.III 25). Officer Parker

---

[1] Officer Parker was able to observe appellant doing this despite the night time hour because he shone his flashlight into appellant's vehicle (R.R.III 20).

[2] Although appellant was being detained, he was not yet placed in handcuffs (R.R.III 24).

told Mr. Galloway to open his mouth, which he did briefly, but then shut it "and began to chew" (R.R.III 25-26). Mr. Galloway persisted in his chewing and swallowed the substance in his mouth despite Officer Parker's orders to the contrary (R.R.III 26). Officer Parker grabbed Mr. Galloway's arm to handcuff him, but Mr. Galloway resisted and a struggle ensued (R.R.III 26-27). Once Mr. Galloway chewed and swallowed the substance in his mouth, Officer Parker was able to gain control of Mr. Galloway and placed him and then appellant in handcuffs (R.R.III 27). A screwdriver[3] with white residue was recovered from Mr. Galloway's front pocket (R.R.III 28). Officer Parker then retrieved the two white crack rocks appellant dropped on the driver's seat (R.R.III 31, R.R.IV 17). The total weight of the crack rocks was .18 grams (R.R.IV 17).

———————◆———————

## SUMMARY OF THE ARGUMENT

The trial court did not err in denying appellant's motion to suppress because the search of appellant's vehicle was supported by probable cause since Officer Parker observed crack cocaine in plain view on the driver's seat of appellant's vehicle while Officer Parker was standing outside the vehicle at a lawful vantage point.

Appellant has not preserved any claim that the trial court's comments to the venire lowered the State's burden because he failed to object at trial, and the

---

[3] A screwdriver is frequently used to remove the "brillo", used as a filter, in a crack pipe (R.R.III 28-29).

3

comments did not indicate a bias or partiality. The trial court's comments did not confuse the jury or lower the State's burden because the comments simply encouraged the venire to use their common sense when determining if the State has proven the case beyond a reasonable doubt to each individual juror. Further, appellant has inadequately brief this point of error regarding any alleged jury charge error by providing no authority for the proposition that the instruction on the burden of proof in this case was erroneous. Regardless, the instruction in this case does not define beyond a reasonable doubt, nor comment on the evidence, and is thus not error. Appellant cannot establish that he suffered any harm as a result of the trial court's statements in voir dire or the jury instruction regarding the burden of proof because appellant failed to argue that he suffered harm, and thus impliedly concedes there was no harm, and the evidence of appellant's guilt was overwhelming

The trial court did not abuse its discretion in admitting State's Exhibit 4 and 5, the evidence envelope and the crack cocaine rocks contained therein, because the chain of custody was conclusively established by Officer Parker who testified that he retrieved the evidence, tagged it for transport to the laboratory, then retrieved the exhibits and brought them to court for trial.

The evidence that appellant possessed the crack cocaine rocks is legally sufficient because of appellant's close proximity and accessibility to the narcotics, appellant was seen gesturing suspiciously in the area of where the drugs were found,

the narcotics were found in plain view where appellant was sitting, and appellant was acting nervous.

————————◆————————

## REPLY TO FIRST POINT OF ERROR

Appellant argues that the trial court erred in overruling his motion to suppress because Officer Parker did not have probable cause to search appellant' s vehicle, and *Gant* prohibited Officer Parker from searching the vehicle incident to arrest because appellant and Mr. Galloway were handcuffed in the back of a patrol car and there was no reasonable belief that Officer Parker could have found evidence of the crime of failure to signal a turn inside the vehicle. However, Officer Parker had probable cause to search the vehicle when he observed crack cocaine in plain view on the driver's seat when appellant got out of the vehicle, and *Gant* provides no limitations to Officer Parker's search of appellant's vehicle since that search was supported by probable cause.

**Standard of Review**

In reviewing the trial court's denial of a motion to suppress, the proper standard of review is a bifurcated standard. *St. George v. State,* 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). If the decision of the trial court turns on the determination of historical facts, the appellate court gives nearly complete deference to the trial court's decision. *St. George,* 237 S.W.3d at 725.

This is especially true when the fact findings of the trial court are based on credibility and demeanor of witnesses. *Id.* If the issue presented is a mixed question of fact and law, the same level deference is given when resolving that issue if it turns on the credibility and demeanor of witnesses. *Guzman v. State,* 955 S.W.3d 85, 89 (Tex. Crim. App. 1997). Mixed questions of law and fact that do not turn on the credibility of witnesses are reviewed de novo, as are pure questions of law. *St. George*, 237 S.W.3d at 725; *Guzman*, 955 S.W.2d at 89; *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). The decision of the trial court should be sustained if it is supported by any applicable theory of law. *St. George*, 237 S.W.3d at 725.

**Analysis**

Appellant filed a pretrial motion to suppress seeking suppression of all physical evidence and statements of appellant and Mr. Galloway as obtained in violation of appellant's rights under Article 38.22 of the Texas Code of Criminal Procedure, Article I §§ 9, 10, and 19 of the Constitution of the State of Texas, and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution (C.R. 31-32). At trial, during the testimony of Officer Parker, appellant re-urged his motion to suppress, which the trial court denied, stating that "there was probable cause, […] it appears that the officer testified it was in plain view[, and]…the officer's testimony regarding the traffic stop and his observations was credible and undisputed" (R.R.IV 13).

6

The Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution protect against unreasonable searches and seizures. U.S. CONST. IV; TEX. CONST. art. I, § 9; *State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013). A search conducted without a warrant supported by probable cause is unreasonable with some specifically delineated exceptions. *See Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000). In the present case, it is undisputed that Officer Parker did not have a warrant to search appellant's car.

An exception to the warrant requirement is the plain view doctrine which requires that law enforcement (1) be legally present when making their observation and (2) have probable cause to associate any visible evidence with criminal activity, or put another way, that the incriminating nature of evidence be readily apparent. *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). An officer is at a lawful vantage point when having legally made a traffic stop looks through the windows of the vehicle into its interior. *Texas v. Brown*, 460 U.S 730, 739-40 (1983). An officer may rely upon his training and experience in determining whether the item observed in plain view is contraband. *Brown*, 460 U.S. at 746 (Powell, J. concurring)(*citing United States v. Cortez*, 449 U.S. 411, 418 (1981); *Nichols v. State*, 886 S.W.2d 324, 326 (Tex. App.—Houston [1st Dist.] 1994, pet ref'd).

Appellant concedes that Officer Parker had probable cause to conduct a traffic stop for the offense of failure to signal a lane change, for which appellant could be

7

arrested.[4] In it undisputed that Officer Parker seized crack cocaine that he observed in plain view on the driver's seat of the vehicle as appellant got out of the driver's seat (R.R.III 23). Contraband seen in plain view may be seized without a warrant. *Brown*, 460 U.S at 736-39 (when officer observed what appeared to be a drug balloon inside a vehicle, he was permitted to enter the car, and seize it). Evidence found in plain view does not constitute a search under the Fourth Amendment. *See Walter*, 28 S.W.3d at 531; *Long v. State*, 532 S.W.2d 591, 594 (Tex. Crim. App. 1975); *See also Swarb v. State*, 125 S.W.3d 672, 680 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd) (there is no invasion of privacy when something can be seen in plain view).

In the present case, Officer Parker conducted a traffic stop of appellant in an area known for narcotics activity (R.R.III 15-17). Appellant appeared and sounded nervous (R.R.III 18-19). With the assistance of Officer Parker's flashlight, he observed appellant appear to be concealing something in his hand, and then appeared to try to surreptitiously drop the item on his seat while reaching for his wallet (R.R.III 18-20). Officer Parker knew from his experience that this behavior was consistent with someone attempting to hide narcotics (R.R.III 19). Officer Parker then asked appellant to step outside the vehicle[5], and as appellant got up from his seat he

---

[4] Appellant's brief at 8. *See* TEX. TRANSP. CODE § 545.104 (West 2011); See also TEX. CODE OF CRIM. PROC. art. 14.01.

[5] Once a driver has legally been stopped for a traffic offense, the additional intrusion of asking the driver to step outside of the vehicle is de minimis and thus does not offend the Fourth Amendment. *Maryland v. Wilson*, 519 U.S. 408, 412 (1997) (*citing Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1997) "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violation the

8

observed what he knew, from his training and experience, to be two white crack cocaine rocks (R.R.III 23).

The trial court could have reasonably concluded that because Officer Parker had probable cause to search appellant's car, a search warrant was not necessary. Observation of contraband or evidence of a crime in plain view inside a vehicle can be used to establish probable cause to seize the contraband or evidence. *Dahlem II v. State*, 322 S.W.3d 685, 689 (Tex. App.—Fort Worth 2010, pet ref'd) (citing *Colorado v. Bannister*, 449 U.S.1, 4 (1980)); *See also Dickey v. State*, 96 S.W.3d 610, 612 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Officer Parker's observation of crack rocks on the driver's seat of the vehicle gave him probable cause to search the vehicle. *Walter*, 28 S.W.3d at 539-41. Officer Parker's actions did not implicate the Fourth Amendment. *See Swarb*, 125 S.W.3d at 680 ("[T]he officers…approached appellant's vehicle in a parking lot open to the public and shone a flashlight into appellant's vehicle, there by observing the methamphetamine in plain view…Looking inside the vehicle, even with the use of a flashlight, does not implicate the Fourth Amendment").

Appellant argues that *Gant* acts in this case to make Officer Parker's entry into appellant's vehicle illegal because Officer Parker had "no reason to believe that evidence for which [appellant] had been placed in custody- failure to signal turn (sic)- would be found in the vehicle and since [appellant] and his passenger had been

Fourth Amendment's proscription of unreasonable seizure.)); *See also Rhodes v. State*, 945 S.W.2d 115, 118-19 (Tex. Crim. App. 1997).

9

removed and secured in the police unit, there was no basis to believe that either would be capable of reaching for a weapon or capable of destroying evidence."[6]

In *Arizona v. Gant*, the Supreme Court held that law enforcement "may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment of the vehicle at the time of the search or it is reasonable to believe that the vehicle contains evidence of the offense of arrest." 556 U.S. 332, 351 (2009). *Gant* did not disturb the long standing rule that, if probable cause exists that a vehicle contains evidence of criminal activity relevant to any offense, then police may search any area of the vehicle where that evidence might be found. *Id.* at 347 (*citing United States v. Ross*, 456 U.S. 798, 820-21 (1982)); *See also Barnes v. State*, 424 S.W. 3d 218, 225 (Tex. App.-Amarillo 2014, no pet.) ("But *Gant* did not diminish the reach of the automobile exception"). Probable cause to search exists when reasonably trustworthy facts and circumstances within the officer's knowledge on the scene would lead persons of reasonable prudence to believe that an instrumentality of a crime or evidence pertaining to a crime will be found. *Dahlem II*, 322 S.W.3d at 689 (*citing Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). An officer's observation of contraband or evidence of a crime in plain view inside an automobile can be used to establish probable cause to seize the contraband. *Id.* at 689; *United States v. Sparks*, 291 F.3d 683, 690-91 (10th Cir. 2002)("if an officer has lawfully observed an object of incriminating character in plain view in a vehicle,

---

[6] Appellant's brief at 15.

that observation, either alone or in combination with additional facts, has been held sufficient to allow the office to conduct a probable cause search of the vehicle.").

Appellant cites *Gant*[7] and *Majette*[8] as authority for the proposition that appellant was not within reaching distance of the passenger compartment of his vehicle[9], but those cases are factually distinguishable because in neither *Majette* nor *Gant* did probable cause to search the vehicle exist, as it does in this case.

Appellant further argues that "[t]he subsequent search of [appellant's] vehicle was based upon [Officer Parker's] hunch or suspicion and not upon his observation of cocaine that he suspected [appellant] had dropped in the driver seat when he reached and obtained his wallet from his back pocket."[10] Appellant's argument that the search was based only on Officer Parker's suspicion that narcotics activity was afoot completely ignores the fact that Officer Parker observed what he knew from his training and experience to be crack cocaine on the driver's seat prior to searching the vehicle, thus providing him with probable cause to search (R.R.III 23). Because the search of appellant's vehicle was supported by probable cause since Officer Parker saw appellant appear to drop something, and then saw crack rocks in plain view on

---

[7] *Gant*, 556 U.S. at 335-336 (holding that a search of the defendant's vehicle, when the defendant was arrested and secured inside of a patrol car, violated the Fourth Amendment).

[8] *United States v. Majette*, 326 Fed. Appx. 211, 213 (4th Cir. 2009) (holding that the search of the defendant's vehicle after the defendant had been arrested for driving with a suspended license and secured in the back of a patrol car violated the Fourth Amendment).

[9] Appellant's brief at 11-15.

[10] Appellant's brief at 16-17.

the driver's seat of appellant's vehicle when he stood up, appellant's point of error should be overruled.

**REPLY TO SECOND POINT OF ERROR**

Appellant has not preserved any claim that the trial court's comments to the venire lowered the State's burden because he failed to object at trial, and the comments did not indicate a bias or partiality. Alternatively, the trial court's comments did not confuse the jury or lower the State's burden because the comments simply encouraged the venire to use their common sense when determining if the State has proven the case beyond a reasonable doubt to each individual juror. Further, appellant has inadequately brief this point of error regarding any alleged jury charge error by providing no authority for the proposition that the instruction on the burden of proof in this case was erroneous. Regardless, the instruction in this case does not define beyond a reasonable doubt, or comment on the evidence, and is thus not erroneous. Appellant cannot establish that he suffered any harm as a result of the trial court's statements in voir dire or the jury instruction regarding the burden of proof because appellant failed to argue that he suffered harm, and thus impliedly concedes there was no harm, and the evidence of appellant's guilt was overwhelming

**Standard of Review**

In reviewing a claim of jury charge error, the reviewing court must first determine whether error occurred. *Abdnor v. State*, 871 S.W.2d 726, 731-32 (Tex. Crim. App. 1994). If the error is properly objected to, reversal is required if "some harm"

occurs. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984); TEX. CODE OF CRIM. PROC. ANN. art. 36.19 (West 2012). "Some harm" simply means that reversal is mandated when it has any impact on the accused. *Id.* However, if the error is not objected to at trial, reversal is required only when the accused "has not had a fair and impartial trial." *Almanza*, 686 S.W.2d at 171; TEX. CODE OF CRIM. PROC. ANN. art. 36.19 (West 2012). This type of error is referred to "egregious" or "fundamental error." *Almanza*, 686 S.W.2d at 171.

The entire record is examined considering the charge, the evidence, arguments of counsel, weight of the evidence, contested evidence, and anything else that is relevant in the record when looking for whether some harm or egregious harm occurred. *Id.*

**Preservation of error**

To preserve error on appeal, a party must first have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.01(a)(1); *Layton v. State*, 280 S.W.3d 235, 238-39 (Tex. Crim. App. 2009). The error alleged on appeal must correspond to the objection made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Further, the trial court must have ruled on the request, objection, or motion, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A reviewing court should not

address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009); *See also Brumit v. State*, 206 S.W.3d 639, 644-45 (Tex. Crim. App. 2006) (stating that the Court did not need to decide whether objection was required to preserve alleged error on appeal when complained comments of the trial court when record does not reflect that the comments reflected any bias or lack of impartiality of the court).

In the present case, appellant did not object to the trial court's voir dire on proof beyond a reasonable doubt or to the charge (R.R.II 9-13, R.R.IV 24). Appellant waived any error in the trial court's statements during voir dire by not objecting to them. *Fuentes v. State,* 991 S.W.2d 267, 273 (Tex. Crim. App.1999) (holding that appellant waived complaint about trial court's explanation of reasonable-doubt standard during voir dire by failing to renew objection when trial court repeated explanation); *Moore v. State,* 907 S.W.2d 918, 923 (Tex. App. --Houston [1st Dist.] 1995, pet. ref'd) (holding that appellant waived complaint about trial court's comment during voir dire about weight of evidence); *Haro v. State*, 371 S.W.3d 262, 266 (Tex. App.—Houston [1st Dist.] 2001, pet ref'd) (holding that the defendant waived error by failing to object to the trial court's comments on reasonable doubt because the error was not fundamental). Because appellant failed to preserve error regarding the trial court's statements to the venire during voir dire, appellant's point of error should be overruled.

**Analysis**

If this Court chooses to address the merits of appellant's claim, appellant is wrong because the trial court's comments did not confuse the jury or lower the State's burden because the comments simply encouraged the venire to use their common sense when determining if the State has proven the case beyond a reasonable doubt to each individual juror.

In Texas, courts do not define beyond a reasonable doubt. *Fuller v. State*, 363 S.W.3d 583, 586 (Tex. Crim. App. 2012); *Anderson v State*, 414 S.W.3d 251, 256 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). The term is meant to be understood in its common meaning, so that "each juror must decide for himself what amount of proof would constitute the threshold of beyond a reasonable doubt." *Murphy v. State*, 112 S.W.3d 592, 597 (Tex. Crim. App. 2003). Jurors should use their common sense in determining whether the standard of proof has been met. *Rogers v. State*, 795 S.W.2d 300, 306 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd).

In the present case, during voir dire, the trial court instructed the panel that there is no definition of beyond a reasonable doubt, but that physical evidence or the testimony of one witness could be enough for a guilty verdict because its "the quality of the evidence, not the quantity" that matters and the jury determines quality (R.R.II 9-10, 13).[11]

---

[11] Appellant argues that "the trial court's voir die and instruction to the jury equating 'beyond a reasonable doubt' with respect to comments upon evidence in other cases that required one witness, fingerprints, DNA, and no eyewitnesses which was satisfactory for juries to enter

Appellant argues that "by telling the jury there was no definition of 'beyond a reasonable doubt' and that the appellate courts have left it up to each individual 'jurors [sic] to determine their level of satisfaction beyond a reasonable doubt' leaves little question that this construction was confusing, ill-advised[,] and certainly dangerous because of the likelihood that it had the effect taken to suggest that the jury could convict based upon proof different from, and less rigorous than, the very high standard set forth by the Supreme Court's requirement of 'a subjective state of near certitude.'"[12] However, the trial court's statements were permissible and did not confuse the venire or lower the State's burden. *See Latson v. State*, 440 S.W.3d 119, 121 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

In *Latson*, the trial court instructed the panel in voir dire that, although there was no definition of beyond a reasonable doubt, it is whatever "kind of proof that proves to [the jurors] individually…in your heart." *Id.* The defendant argued on appeal that, by telling the panel this, the trial court improperly defined beyond a reasonable doubt. *Id.* Similarly, appellant argues in the present case that "the context in which the trial court discussed the burden of proof and comments on other cases

---

verdicts beyond a reasonable doubt…worked to lower the State's burden of proof." (Appellant's brief at 23). This is factually inaccurate. During the trial court's instruction on the burden of proof it's only reference to "other cases" was a reference to an episode of CSI, which was used to illustrate that what happens on TV is not reality, not as an illustration to what constitutes proof beyond a reasonable doubt (C.R. 12-13). Contrary to appellant's argument, the trial court did not give fact scenarios as to what evidence juries have found satisfactory to constitute proof beyond a reasonable doubt, but only stated that it could be based on the "testimony of one single witness if that witness is believed by the jurors to be credible, and they prove every element of the offense beyond a reasonable doubt" or upon "physical evidence alone" (C.R. 13).
[12] Appellant's brief at 26-27.

and potential evidence worked to lower the State's burden of proof… [to each juror's] '[l]evel of satisfaction' [which is] substantially below what the United States Supreme Court [articulate] in its unanimous decision in *Jackson v. Virginia*, …[for] the need for 'a subjective state of near certitude'…"[13] In *Latson*, the Court held that the trial court's comments that beyond a reasonable doubt was what was in each juror's "heart" was not improper. *Id*; *See also Haro v. State*, 371 S.W.3d 262, 266 (Tex. App.—Houston [1st Dist.] 2011, pet ref'd) (concluding that trial court's comments during voir dire did not taint the presumption of innocence when the trial court instructed the panel that beyond a reasonable doubt is what each individual juror believes it to be); *Wilder v. State*, 111 S.W.3d 249, 252-53 (Tex. App.—Texarkana 2003, pet ref'd) (holding that prosecutor's explanation that the State did not have to prove one hundred percent certainty permissible). *See also Cade v. State*, 795 S.W.2d 43, 45 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (concluding that trial court's comment that reasonable doubt test might be satisfied "somewhere between fifty and one hundred" on a scale of one to 100 was not fundamental error because it did not "cause the jury to misunderstand the reasonable doubt standard); *See also Zachery v. State*, No. 14-07-01050-CR, 2009 WL 136915 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (not designated for publication) (holding that trial court's comment, that jurors would know when they were convinced that someone had violated the law and when the State had proved each element beyond a reasonable doubt, "did not belie an improper

---

[13] Appellant's brief at 23-24.

standard"); *See also Williams v. State*, No. 07-01-0414-CR, 2003 WL 327601 (Tex. App.—Amarillo 2003, pet. ref'd) (not designated for publication) (finding that prosecutor's suggestion during voir dire that jurors use "common sense" to define reasonable doubt, and trial court's explanation that reasonable doubt is not proof beyond all doubt, were not error).

In both the present case and in *Latson*, the trial court's comments did not indicate that appellant was guilty or apply the burden of proof to the facts of the present case (R.R.II 9-10, 13). *Latson*, 440 S.W.3d at 121. The trial court also did not shift the burden of proof to the defense (R.R.II 9-10, 13). *Id.* In fact, in the present case, that trial court was clear that the State has "done the accusing, they have to do the proving" and "defense counsel is not required to bring [the jury] any evidence" (R.R.II 14).

Thus, when the trial court instructed the panel that they must decide if the State has proven the case to each individual juror's "level of satisfaction" it was simply instructing the panel that "each juror must decide for himself what amount of proof would constitute the threshold of beyond a reasonable doubt" using their common sense. *Murphy*, 112 S.W.3d at 597; *Roger*, 795 S.W.2d at 306. *See also Meadows v. State*, 01-09-00443-CR and 01-09-00444-CR, 2010 WL 2874199, at *5 (Tex. App.— Houston [1st Dist.] July 22, 2010, pet ref'd) (mem. op., not designated for publication) (holding that trial court did not commit fundamental error in stating that beyond a reasonable doubt was "whatever it means" to each juror, "kind of like obscenity, you

know it when you see it" because trial court's statement did not convey opinion as to defendant's guilt or innocence, and thus did not lower the State's burden); *See also Copeland v. State,* No. 14–07–00475–CR, 2008 WL 4735199, at *2 (Tex. App.-- Houston [14th Dist.] Oct. 30, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that the trial court did not abuse its discretion by overruling the appellant's objection to prosecutor's statement that reasonable doubt is "whatever it means to you").

In the present case, the jury charge gave the following instruction regarding the State's burden of proof:

(1) The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

(2) It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt.

(3) In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict "Not Guilty."

(C.R. 98). In *Paulson*, the Court overruled the requirement that a definition of reasonable doubt be submitted to the jury as was required by the prior precedent in *Geesa*[14]. *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000). In evaluating

---

[14] *Geesa v. State*, 820 S.W.2d 154 (Tex. Crim. App. 1991) *overruled by Paulson v. State*, 820 S.W.2d 154 (Tex. Crim. App. 2000).

whether a jury charge violates *Paulson*, the reviewing court must to look to whether a definition of reasonable doubt exists in the charge. *Id.* at 573.

Although appellant cites the standard of review for jury charge error and then recites part of the court's charge regarding the burden of proof,[15] appellant offers no authority or analysis on why this jury instruction was improper, and consequently any jury charge error has been inadequately briefed. *See* TEX. R. APP. PROC. 38.1(i).

If this court chooses to address whether the jury charge contained error regarding its instruction regarding proof beyond a reasonable doubt, the three paragraphs listed above did not define beyond a reasonable doubt, and thus do not violate *Paulson. See Garcia v. State*, 246 S.W.3d 121, 143 (Tex. App.—San Antonio 2007, pet. ref'd) (holding that the same three paragraphs at issue in the present case "did not constitute a definition of reasonable doubt and therefore did not violate Paulson…[and thus] the trial court did not err by including the above language in the charge). *See also Carriere v. State*, 84 S.W.3d 753, 759 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding that the jury instruction that "[i]t is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt" was not error). The instruction in the present case is not the type of instruction prohibited by *Paulson. Id.* at 759; *Paulson*, 28 S.W.3d at 573. *Paulson* did not preclude trial courts from

---

[15] Appellant's brief at 17, 22.

20

submitting proper jury instructions that may be phrased differently. *Carriere*, 84 S.W.3d at 759-60.

Appellant has not preserved any claim that the trial court's comments to the venire lowered the State's burden of proof because he failed to object at trial, and the comments did not indicate a bias or partiality. Alternatively, the trial court's comments did not confuse the jury or lower the State's burden because the comments simply encouraged the venire to use their common sense when determining if the State has proven the case beyond a reasonable doubt to each individual juror. Further, appellant has inadequately brief this point of error regarding an alleged charge error by providing no authority for the proposition that the instruction on the burden of proof in this case was erroneous. Regardless, the instruction in this case does not define beyond a reasonable doubt, or comment on the evidence, and is thus not error. Appellant's point of error should be overruled.

**Harm**

Appellant fails to argue that appellant suffered any harm from the trial court's alleged erroneous comments during voir dire or alleged erroneous instruction in the jury charge regarding proof beyond a reasonable doubt.

Regarding the statements made by the trial court during voir dire regarding beyond a reasonable doubt, under Texas Rule of Appellate Procedure 44.2(a), an appellate court must reverse a judgment if the record reveals a constitutional error,

unless the court determines that the error did not contribute to the conviction or punishment. *See* TEX. R. APP. P. 44.2(a).

A proper harm analysis regarding jury charge error looks at the degree of the harm "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. Since no objection was made to the jury charge, the record must demonstrate egregious harm to give appellant the relief he requests (R.R.IV. 24).

Under either harm analysis, appellant suffered no harm from the trial court's comments or the instruction in the jury regarding proof beyond a reasonable doubt considering the overwhelming evidence of appellant's guilt. *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002). Appellant acted nervous and appeared to be concealing narcotics (R.R.III 18-20). He then appeared to drop the object he was hiding while reaching for his wallet (R.R.III 20). Appellant got up from his seat, and the crack cocaine rocks were sitting on his seat near the area in which he appeared to have dropped the object (R.R.III 23; R.R.IV 17). Appellant's passenger also resisted arrested and was in possession of drug paraphernalia (R.R.III 26-29). The jury convicted appellant in an hour and fifteen minutes (C.R. 116). Appellant cannot say he suffered any harm given the overwhelming evidence of his guilt. *Id.*

Appellant does not indicate where in the record harm occurred, nor any legal authority for the proposition. This is either because he concedes that no harm

occurred, or because he failed to appropriately cite to the support for his contention as required by Rule 38.1(i) of the Texas Rule of Appellate Procedure. Either way, appellant's point of error should be overruled.

## REPLY TO THIRD POINT OF ERROR

Appellant argues that the trial court abused its discretion in admitting State's Exhibit 4 and 5 into evidence because the chain of custody was not proven. However, the trial court did not abuse its discretion in admitting State's Exhibit 4 and 5, the evidence envelope and the crack cocaine rocks contained therein, because the chain of custody was conclusively established by Officer Parker who testified that he retrieved the evidence, tagged it for transport to the laboratory, then retrieved the exhibits and brought them to court for trial.

**Standard of Review**

The proper standard of review for challenging the chain of custody is abuse of discretion. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). The evidence has been authenticated, or the chain of custody has been established, when there is sufficient evidence to support a finding that the evidence is indeed what it claims to be. TEX. R. EVID. 901. Absent evidence of tampering, questions regarding the chain of custody affect the weight the jury may assign to the evidence, not the admissibility of the evidence. *Davis v. State*, 313 S.W.3d 317, 348 (Tex. Crim. App. 2010). If there is an allegation that the evidence has been tampered with, the allegation must be

supported by affirmative evidence of tampering. *Dossett v. State*, 216 S.W.3d 7, 17 (Tex. App.—San Antonio 2006, pet ref'd). The theoretical possibility that the evidence has been tampered with or the potential for tampering is not sufficient. *Id.*

**Analysis**

To prove chain of custody, it is only necessary that the beginning and end of the chain be proven. *Shaw v. State*, 329 S.W.3d 645, 654 (Tex. App.—Houston [14th Dist.] 2010, pet ref'd) (rejecting the claim that the evidence was inadmissible because the State did not have every person who touched the evidence testify to their contact with the evidence.). It is not necessary to prove every minute in the life of the evidence. *Id.* Chain of custody is conclusively established if an officer testifies that he sieved an item of physical evidence, tagged it, placed an identifying mark on it, placed it in evidence storage, and retrieved the item for trial. *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997).

In the present case, Officer Parker testified that he retrieved the crack rocks from the seat appellant was sitting in and then secured the crack rocks, State's Exhibit 5, inside State's Exhibit 4, the evidence envelope (R.R.III 32-33). Officer Parker testified that he recognized State's exhibits 4 and 5 as the evidence envelope and the crack cocaine contained inside respectively (R.R.III 33). He initialed State's exhibit 4 when he sealed State's exhibit 5 inside it (R.R.III 33). He then took State's exhibits 4 and 5 to the narcotics operation and control center, and from there it was transported to the lab (R.R.III 34). The exhibits were then brought to court by Officer Parker on

trial day (R.R.III 34). The exhibits were "in the same or substantially similar condition" as when Officer Parker dropped it off at the narcotics operation and control center (R.R.III 34).

At the laboratory, they were placed in "centralized evidence receiving" which is "part of the property room" (R.R.IV 7). Although there was no testimony about the extent of the security in the property room, there was testimony that the integrity of evidence retrieved from "centralized evidence receiving" is maintained by ensuring that all seals are intact when retrieving evidence and prior to analysis (R.R.IV 7-8). The evidence envelope, State's exhibit 4 and its contents, State's exhibit 5, arrived sealed and had no signs of tampering (R.R.IV 10-11). Ms. Rodriguez, the criminalist specialist, was able to identify the evidence envelope in the court because it bore her initials that she placed on it when she did the analysis (R.R.IV 11). Ms. Rodriguez followed safety protocols while testing the cocaine in this case (R.R.IV 10). Once Ms. Rodriguez had done the analysis on the crack rocks, she "sealed the evidence inside of a Ziploc inside of the evidence envelope and sealed the evidence envelope to be returned to centralized evidence receiving where it was then stored in a vault." Officer Parker then brought the evidence to court for trial (R.R.IV 22). Appellant objected to State's exhibits 2 through 5 stating that:

> .…yesterday I believe that both of the envelopes were actually opened. Today [the State] has gone through the whole process of opening the envelope. Do they get resealed every day?...Well, my objection, well, one, because I will reurge my Motion to Suppress at this time regarding State's Exhibit 5 based on, you know, lack of probable cause.

[The court denied the motion to suppress.]

Ms. Lawton: Okay. Respectfully, may I—yes, I still believe there's a foundation issue with State's 5 because of the fact that it, whether or not this is the actual, the same things, I mean that were—

The Court: again, I recognize that you made that objection to the weight not the admissibility. I'm admitting these two exists over objection.

(R.R.IV 13-14).

Officer Parker took the witness stand for a second time to clarify that after the previous day of testimony he resealed State's Exhibits 2, 3,[16] 4, and 5 and drove them back to the crime lab and "turned them in" (R.R.IV 22-23). The next morning, he retrieved them from the crime lab and brought them back to court (R.R.IV 23).

Appellant argues that "there is no link in the chain that discloses the transfer of the evidence submitted by Officer Parker[,] who did not initial any of the packages of cocaine to the laboratory[,] or any documentation that Exhibit 4, the evidence envelope, was delivered to the laboratory and placed in a vault for security purposes."[17] While no evidence was offered as to who drove the exhibits from the narcotics operation and control center to centralized evidence receiving, the chain of custody in the present case was proven by establishing the beginning and end of the chain through the testimony of Officer Parker and Ms. Rodriguez. *Shaw*, 329 S.W.3d at 654. Appellant's argument that the State failed to establish that "any documentation

---

[16] State's Exhibits 2 and 3 were the evidence envelope and screwdriver with cocaine residue found on the passenger Ed Galloway, which were not admitted into evidence (R.R.IV 14).
[17] Appellant's brief at 34-35.

that Exhibit 4, the evidence envelope, was delivered to the laboratory and placed in vault"[18] ignores the fact that the witnesses testified that this occurred. Appellant is wholly without authority that physical "documentation" of chain of custody is a prerequisite to admissibility.

Appellant then complains that Officer Parker resealed and took exhibits 4 and 5 back to the lab after he testified, and then checked them out the next morning and brought them back to court where they were entered into evidence.[19] Appellant argues that Officer's Parker's actions constituted tampering.[20] Tampering is defined as "the act of altering a thing; esp., the act of illegally altering a document or product, such as written evidence or a consumer good." BLACK'S LAW DICTIONARY (9th ed. 2009). Officer Parker did not alter State's Exhibit 4 or 5. He simply resealed State's Exhibit 4, which contained State's Exhibit 5, and took it to a secure location so it could be brought back to the court for the proceedings the next morning (R.R.IV 22-23). Appellant's argument that this constituted tampering is ludicrous, and if sustained, would lead to absurd results where officers are punished for taking care to ensure the integrity of the piece of evidence is maintained during trial by resealing and transporting evidence to a secure facility[21].

---

[18] Appellant's brief at 35.
[19] Appellant's brief at 35.
[20] Appellant's brief at 35.

Appellant also complains that "the 'rocks' of cocaine were neither tagged nor marked for identification before being left by [O]fficer Parker with the 'narcotics operation and control center' nor was there any evidence that the untagged or marked cocaine admitted as State's Exhibit 5 was other than what appeared to be rock cocaine contained in the evidence envelope marked as State's Exhibit 4..."[22] The State is uncertain what exactly appellant is saying, but this argument seems to complain that Officer Parker did not physically mark the actual crack rocks, while conceding that there is no evidence that State's Exhibit 5 was not what it purported to be: rocks of crack cocaine. Common sense dictates that the actual narcotics cannot be labelled without tampering with the actual crack cocaine rocks, assuming labelling crack rocks is physically possible. This is why narcotics evidence is put into sealed evidence envelopes and then the envelopes are initialed and marked. Appellant provides no authority for the proposition that the actual crack cocaine rocks should have been tagged and labelled because none exists.

To further illustrate that the trial court did not abuse it's decision in determining that chain of custody was sufficiently prove, contrast the facts of the present case with *Ennis*. In *Ennis*, the Court held that the trial court did not abuse its discretion in admitting weapons into evidence despite the fact that the testimony did not conclusively establish (1) where the weapons were retrieved from, (2) who retrieved the weapons, and the testimony also determined that (3) the weapons retrieved were

---

[22] Appellant's brief at 35-36.

not identified as the ones used by the defendant, (4) there was no accounting for the discrepancy between the time the weapons were seized and when the evidence envelope was sealed, and (5) there were inconsistencies regarding the evidence envelope. *Ennis v. State*, 71 S.W.3d 804, 807-08 (Tex. App.—Texarkana 2002, no pet.). Given all of these problems regarding the chain of custody of two weapons, in which the defendant was charged with possession of weapons in a penal institution, the trial court's decision to admit the weapons into evidence was not an abuse of discretion. *Id.*

Chain of custody is conclusively established if an officer testifies that he seized an item of physical evidence, tagged it, placed an identifying mark on it, placed it in evidence storage, and retrieved the item for trial. *Lagrone,* 942 S.W.2d at 617. Since Officer Parker testified that he did all of these things in the present case, appellant's point of error should be overruled.

<u>**REPLY TO FOURTH POINT OF ERROR**</u>

Appellant argues that the evidence that appellant possessed the crack cocaine rocks was legally insufficient because Officer Parker did not testify that he saw the narcotics in appellant's hand. However, the evidence was sufficient because of appellant's close proximity and accessibility to the narcotics, appellant was seen gesturing suspiciously in the area of where the drugs were found, the narcotics were found in plain view where appellant was sitting, and appellant was acting nervous.

**Standard of Review**

The Court of Criminal Appeals has held that legal sufficiency is the only standard a reviewing court should apply in evaluating whether the evidence proving each element of the charged offense has been proven beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Pomier v. State*, 326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Accordingly, this Court must apply a legal-sufficiency standard when addressing appellant's sufficiency arguments. *Brooks*, 323 S.W.3d at 912; *Pomier*, 326 S.W.3d at 378.

Under a legal sufficiency review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S 307, 319 (1979); *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). This Court considers all the evidence and the reasonable inferences therefrom. *Conner*, 67 S.W.3d at 197; *Alvarado v. State*, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). The jury, as the trier-of-fact, "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999); *Villani v. State*, 116 S.W.3d 297, 301 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd.). This Court should not re-evaluate the weight and credibility of the evidence and thereby substitute its judgment for that of

the fact finder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *Villani*, 116 S.W.3d at 301.

Reconciliation of conflicts in the evidence is within the exclusive province of the jury, and the jury may choose to believe some testimony and disbelieve other testimony. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). There is a presumption that conflicted facts were resolved in favor of the prosecution. *Matson v. State*, 819 S.W.2d 839, 847 (Tex. Crim. App. 1991). Each fact need not point directly and independently to the guilt of appellant, as long as the combined and cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper*, 214 S.W.3d at 13. The question is not whether a rational jury could have entertained a reasonable doubt, but whether it necessarily would have done so. *Swearingen v. State*, 101 S.W.3d 89, 96 (Tex. Crim. App. 2003). The "cumulative force" of all circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

**Analysis**

Appellant argues that the evidence is legally insufficient to prove that he "exercised actual care, custody, control[,] or management over the two crack rocks of cocaine discovered during the [search of appellant's vehicle]."[23]

A person commits an offense when "the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1, unless" the person has a prescription or possesses the substance in the course of their employment. TEX. CONTROLLED SUB. ACT. § 481.115 (West 2013). To prove appellant unlawfully possessed a controlled substance, "the State must prove that the accused exercised control, management, or care over the substance." *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *See also* TEX. HEALTH & SAFETY CODE ANN. § 481.002 (38) (West 2013) ("Possession means actual care, custody, control, or management"). Possession need not be exclusive, and if the accused is not in exclusive possession of the narcotics, independent facts and circumstances must affirmatively link the defendant to the narcotics to the extent that any reasonable juror could conclude that the defendant possessed the substance and had knowledge of it. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); *Kibble v. State*, 340 S.W.3d 14, 18 (Tex. App.—Houston [1st Dist.] 2010, pet ref'd).

Several factors assist in establishing an affirmative link between the defendant and the narcotics. *Evans*, 202 S.W.3d at 162 n. 12. Some non-exhaustive factors to be

---

[23] Appellant's brief at 41.

considered are "(1) the defendant's presence when a search is conducted; (2) whether the substance was in plain view; (3) the defendant's proximity to and accessibility of the substance; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the defendant owned or had the right to possess the place where the substance was found; (12) whether the place where the substance was found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt." *Id.*

In support of his argument, appellant points to caselaw from the 7th circuit and the 11th circuit in two cases in which the defendants were charged with possession of a controlled substance with intent to deliver or distribute.[24] In *Kitchen*, the Court held that the evidence that the defendant possessed the cocaine was insufficient when there had been no agreement between the defendant and the undercover officer to purchase the cocaine, and the undercover officer took the defendant to a location where another undercover officer was waiting with a large amount of cocaine. *Kitchen*,

---

[24] Appellant's brief at 38-41. *See United States v. Kitchen*, 57 F.3d 516 (7th Cir. 1995); *See also United States v. Edwards*, 166 F.3d 1362 (11th Cir. 1999).

57 F.3d at 519. There was conflicting evidence regarding whether the defendant ever touched the cocaine, but at best, he may have picked up a bag of cocaine and held it for two to three seconds. *Id.* The defendant never agreed to buy, nor ever removed it from the trunk of the undercover officer's car. *Id.* The officers arrested the defendant before he took possession of the drugs or even agreed to take possession of the narcotics. *Id.* at 520-525. This evidence was legally insufficient to sustain the conviction. *Id.* at 525.

Similarly in *Edwards*, the defendant was purchasing cocaine from undercover officers. *Edwards*, 166 F.3d at 1363. The defendant brought cash to where an undercover officer parked his car with an envelope of cocaine in the trunk. *Id.* The defendant pulled the cocaine out of the envelope momentarily, then returned it to the envelope, and told the undercover officer that he wanted to "go for a ride" and was then arrested. *Id.* The defendant was arrested before he took possession of the narcotics or agreed to take possession of the narcotics, and thus the evidence proving possession was legally insufficient. *Id.* at 1364.

Both *Kitchen* and *Edwards* involve cases where the officers prematurely arrested the defendants before each defendant came into possession of the narcotics. This is much different than the facts of the present case where the defendant is seen "[cuffing]" his hand, as if he was concealing something, and then appear to drop something while reaching for his wallet in his back pocket (R.R.III 18-20). Moments later, when appellant gets up from his seat, Officer Parker sees crack rocks on

appellant's seat where he appeared to have dropped something while reaching for his wallet (R.R.III 23, R.R.IV 17). The jury was entitled to believe that it was not a coincidence that Officer Parker found crack cocaine in the same location that appellant appeared to drop something that he was concealing in hand, all the while appearing nervous when interacting with Officer Parker.

In *James*, officers were working in a high crime area when they observed the defendant illegally parking at a gas station. *James v. State*, 264 S.W.3d 215, 217 (Tex. App.—Houston [1st Dist.] 2008, pet ref'd). The officer saw the defendant and his passenger exit the parking in the vehicle and observed the driver commit a traffic offense, for which a traffic stop was conducted. *Id.* at 218. With the assistance of the spotlight from the patrol car, the officer observed the defendant "leaning forward in his seat" looking back at the officer while "[gesturing]" in a manner that indicated that he was putting something under the seat. *Id.* The defendant was taken out of the vehicle and placed in a patrol car. *Id.* When the officer returned to the car and looked under the defendant's seat he found a loaded black revolver. *Id.* The defendant was charged with being a felon in possession of a weapon. *Id.* The defendant, on appeal, argued that there was no evidence affirmatively linking him to the weapon since no one saw the firearm in his hand. *Id.* at 219. This Court held that the evidence that the defendant possessed the gun was sufficient because the gun was found close to where he was seated in the vehicle, he acted nervous, and was seen making movements as if he was concealing something under his seat. *Id.* at 219-220.

*James* is similar to the present case. Appellant was acting nervous, he was "[cuffing]" his fingers as if was hiding something, then appeared to drop that hidden object by his thigh while retrieving his wallet (R.R.III 18-20). When appellant got up from the seat, cracks rocks were on appellant's seat in plain view (R.R.III 23; R.R.IV 17). Because of appellant's close proximity and accessibility to the narcotics, appellant was seen gesturing suspiciously in the area of where the drugs were found, the narcotics were found in plain view where appellant was sitting, and appellant was acting nervous, the evidence that appellant had care, custody, control, and management of the crack cocaine rocks is legally sufficient. *Evans*, 202 S.W.3d at 162 n. 12. Appellant's point of error should be overruled.

———————◆———————

## CONCLUSION

It is respectfully submitted that all things are regular and that the conviction should be affirmed.

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ Abbie Miles
**ABBIE MILES**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
TBC No. 24072240
Miles_abbie@dao.hctx.net
Curry_Alan@daohctx.net

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this computer-generated document has a word count of 10, 257 words, based upon the representation provided by the word processing program that was used to create the document.

/s/ Abbie Miles

**Abbie Miles**
Assistant District Attorney

# CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing instrument has been mailed to the appellant's attorney at the following address on January 14, 2015:

Maverick Ray
1419 Franklin, 2nd Floor
Houston, Texas 77002
maverickray@gmail.com

/s/ Abbie Miles
**ABBIE MILES**
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas 77002
(713) 755-5826
TBC No. 024072240
Miles_abbie@dao.hctx.net
Curry_Alan@dao.hctx.net

Date: January 14, 2015